**Juan Cornelius WILLIAMS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–95–180–CR.**

Court of Appeals of Texas, Eastland.

Jan. 16, 1997.

ARNOT, Chief Justice.

The jury convicted Juan Cornelius Williams of capital murder,[1] and the trial court sentenced him to a mandatory life sentence.[2] In two points of error, appellant complains that the trial court erred in denying his motion for mistrial after his codefendant was severed from the trial and in overruling his *Batson* motion.[3] We affirm.

On October 2, 1994, appellant, Jesus Ochoa, and Timothy Nigo went in Ochoa's van to the home of the victim, Sammie Adkisson. Ochoa testified at trial that Nigo told him that they were going to buy drugs and "to rob." The three of them planned that first Nigo would go to the door alone and that, when he returned, appellant and Ochoa would enter the house. Appellant and Ochoa entered the house and began yelling that they were police officers. Ochoa testified that he and appellant instructed the occupants of the house to get on the floor and to "give us what they had." JoAnn Henry, the victim's roommate, testified that appellant took her money and some heroin.

The victim did not believe that Ochoa and appellant were police officers and wanted to see their badges. Appellant struggled with the victim and grabbed the victim by her hair. Appellant then said, "[S]hut up, you stupid bitch" and shot the victim in the head.

In his first point of error, appellant argues that the trial court erred in denying his motion for mistrial after his codefendant was severed from the trial. We disagree.

At a pretrial hearing, appellant made a motion to sever his case from that of his codefendant Nigo arguing that he would not receive a fair trial because the State intended to call a witness who would testify about a statement Nigo made when appellant was not present. The trial court denied his motion for severance. The case then proceeded to voir dire, and a jury was selected. The State made a motion for continuance in regard to

Jeanine Howard, Dallas, for appellant.

John C. Vance, District Attorney, Sue Koroith, Frank Crowley, Dallas, for appellee.

Before ARNOT, C.J., and DICKENSON, J., and McCLOUD,* Senior Justice.

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. TEX.PENAL CODE ANN. § 19.03 (Vernon 1994) defines the offense and provides that it is a capital felony.

2. TEX.PENAL CODE ANN. § 12.31 (Vernon 1994).

3. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Nigo. The judge granted the State's motion, and Nigo was severed from the case. Appellant made no objection at that time.

Appellant's trial continued. After two of the State's witnesses testified, appellant moved for a mistrial. Appellant contended that he had been denied four peremptory strikes because he was now being tried alone. The trial court denied the mistrial, and the State continued questioning witnesses. Appellant later specified four jurors whom he would have exercised strikes against.

In capital cases in which the State is not seeking the death penalty, the State and the defendant each receive ten peremptory challenges. However, if two or more defendants are tried together, each defendant receives six. TEX.CODE CRIM.PRO.ANN. art. 35.15(b) (Vernon Supp.1997). Appellant argues that he was denied four peremptory strikes because he and Nigo were not "tried together" citing *Goode v. State*, 740 S.W.2d 453 (Tex.Cr.App.1987).

In *Goode*, the court held that the defendant was not tried together with her codefendant for purposes of TEX.CODE CRIM. PRO.ANN. art. 35.15(a) (Vernon Supp.1997)[4] when the codefendant was severed from the trial during the State's case-in-chief. The defendant in *Goode* moved for severance from her codefendant, claiming that their defenses were antagonistic and that trying them together would deprive the defendant of her full allotment of peremptory challenges. Goode expressly accepted six of the eight prospective jurors struck by her codefendant. Goode reurged her motion for mistrial and severance as each of the prospective jurors was excused. Goode also requested additional peremptory challenges. The jury was impaneled, and the case proceeded to trial. After the State had examined two witnesses, the court granted a severance as to Goode's codefendant, concluding that the two were pursuing mutually exclusive defenses. Goode objected at that time and requested a mistrial.

We do not find *Goode* controlling. First, we note that *Goode* is a plurality opinion. See *Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Cr.App.1992); *Farris v. State*, 819 S.W.2d 490, 501 n. 3 (Tex.Cr.App.1990); *Hatcher v. State*, 916 S.W.2d 643 (Tex.App.—Texarkana 1996, pet'n ref'd). Second, *Goode* is factually distinguishable from the case before us. In this case, the trial court granted a severance and a mistrial as to Nigo to effectuate a continuance as to Nigo's trial because of the unavailability of a material witness. Unlike *Goode*, the trial court did not find that appellant's and Nigo's defenses were antagonistic thereby forcing appellant to take objectionable jurors. Third, unlike *Goode*, appellant did not properly preserve error in the present case. During voir dire, appellant did not request additional peremptory challenges or identify jurors struck by Nigo that he would have accepted. *Rodriquez v. State*, 721 S.W.2d 504 (Tex.App.—Houston [14th Dist.] 1986), *remanded on other grounds*, 759 S.W.2d 141 (Tex.Cr.App. 1988). Appellant also did not object at the time the trial court granted the State's motion for continuance. TEX.R.APP.P. 52(a).

Finally, the number of peremptory strikes is not a fundamental constitutional right. Rather, it is provided by statute; consequently, the number of strikes should be determined at the time they are exercised. Under TEX.CODE CRIM.PRO.ANN. art. 35.15 (Vernon 1989 & Supp.1997), the term "tried together" should be read in its common meaning: that is, the challenges are determined at the time the strikes are utilized. To adopt appellant's application of *Goode* would require the trial court to grant a mistrial any time it grants a severance for any codefendant after the jury has been selected. When a defendant objects after the trial has begun that he or she did not receive enough strikes, it is too late for the trial court to grant additional strikes because the jury has already been seated. Appellant's first point of error is overruled.

In his second point of error, appellant complains that the trial court erred in denying

---

4. In *Goode*, the State was seeking the death penalty. Under Article 35.15(a), when the State is seeking the death penalty and two defendants are tried together, each defendant receives eight peremptory challenges.

his *Batson* objection to the State's use of peremptory strikes on African–American veniremembers. We disagree.

■■■ The use of peremptory challenges to strike potential jurors on the basis of race is prohibited. TEX.CODE CRIM.PRO. ANN. art. 35.261 (Vernon 1989); *Batson v. Kentucky,* supra; *Keeton v. State,* 724 S.W.2d 58 (Tex.Cr.App.1987). The trial court's determination of a *Batson* motion represents a finding of fact which is accorded great deference and which will not be overturned unless clearly erroneous. *Chambers v. State,* 866 S.W.2d 9 (Tex.Cr.App.1993), *cert. den'd,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989). In determining whether the trial court erred, we must review the record including the voir dire, the racial makeup of the venire, the prosecutor's neutral explanations, and the defendant's rebuttal and impeaching evidence. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Chambers v. State,* supra.

The record does not reveal the racial makeup of the venire panel or of the impaneled jury. The record does show that the State used five of its ten peremptory challenges to strike African–Americans on the venire panel. On appeal, appellant complains that three of the five peremptory challenges were racially motivated.

■■■ During the *Batson* hearing, the prosecutor stated that he struck Veniremember No. 16 because of her employment with the Dallas Independent School District and that he struck all panel members up to Veniremember No. 58 who "happened to have any type of relationship in the education field or being a counselor or some type of educator or teacher." The prosecutor expressed his opinion that persons in the education field are more liberal. Appellant did not offer any rebuttal evidence with regard to Veniremember No. 16.

An explanation based on a group bias where the group trait is not shown to apply to the challenged veniremember specifically

weighs against the legitimacy of any race-neutral explanation. *Keeton v. State,* supra. Appellant cites cases where the court found that the State's peremptory strikes were racially motivated because the prosecutor failed to question the prospective juror to determine if the bias attributed to the group existed in that potential juror.[5] In cases reversed because of the State's failure to establish the legitimacy of its explanations through voir dire questions, at least one of two other factors has existed: (1) the legitimacy of the State's apprehension was not obvious; and (2) there was other evidence of disparate treatment. *Chambers v. State,* supra. In the present case, there was no evidence of disparate treatment in striking members of the venire panel in the education field. *Newsome v. State,* 829 S.W.2d 260 (Tex.App.—Dallas 1992, no pet'n). The prosecutor's explanation that he struck all educators up to Veniremember No. 58 was not challenged by appellant. The trial court did not err in finding that the State's use of a peremptory strike on Veniremember No. 16 was nondiscriminatory.

■■■ The prosecutor explained that he struck Veniremember No. 23 because the veniremember was confused about the standard of "beyond a reasonable doubt." During voir dire examination, the following exchange occurred:

> [PROSECUTOR]: Finally, let me ask it this way—[Veniremember No. 22] are you married? Do you own a car, or do you own a house?
>
> [VENIREMEMBER NO. 22]: Yes to all three.
>
> [PROSECUTOR]: All three. Trick question here again: Did you get married beyond a reasonable doubt?
>
> Sure you did, right? I'm helping you out.
>
> You got married beyond a reasonable doubt. You've used all your powers of understanding. You looked at all the elements, you used your best judgment, you thought about it in your brain and in your

**5.** *Emerson v. State,* 851 S.W.2d 269 (Tex.Cr.App. 1993); *Whitsey v. State,* supra; *Keeton v. State,* supra; *Woods v. State,* 801 S.W.2d 932 (Tex. App.—Austin 1990, pet'n ref'd).

heart, and you did the right thing. Or I hope you did.

[VENIREMEMBER NO. 22]: Yes, sir.

\* \* \* \* \* \*

[PROSECUTOR]: [To Veniremember No. 23] Do you own a house, a car, are you married, sir?

[VENIREMEMBER NO. 23]: Yes to all three.

[PROSECUTOR]: Did you get married beyond a reasonable doubt?

[VENIREMEMBER NO. 23]: No.

[PROSECUTOR]: You didn't. Okay. That's fair enough. Does everybody see where I'm going as far as beyond a reasonable doubt?

During the *Batson* hearing, the prosecutor stated that he struck Veniremember No. 23 because the prosecutor believed that Veniremember No. 23 did not understand the standard of beyond a reasonable doubt, that he had a communication problem, or that there was some reason why he did not get married beyond a reasonable doubt. Appellant made no response or rebuttal to the State's explanations for striking Veniremember No. 23. The trial judge evaluates the prosecutor's state of mind based on demeanor and credibility and determines if the reasons given for striking a potential juror are race-neutral. *Emerson v. State,* 851 S.W.2d 269 (Tex.Cr. App.1993). We must defer to the trial court's finding concerning the State's motivation for its peremptory strike unless it appears that the trial court's finding as to Veniremember No. 23 was clearly erroneous.

 The record reflects that, after both sides had questioned the panel and while they were making their strikes, the prosecutor informed the trial judge that a fellow prosecutor had heard a prospective juror make a negative comment about the government. The fellow prosecutor identified the prospective juror as Veniremember No. 25. The trial judge brought Veniremember No. 25 into the courtroom to question him about the comment. Veniremember No. 25 first indicated that he was talking about NAFTA. Upon further questioning, Veniremember No. 25 indicated that he had also discussed "some California case, but nothing about this case here in particular." Veniremember No. 25 said that he was talking about "how much of a travesty this case in California was versus the way things are normally run." Veniremember No. 25 told the court that he was referring to the O.J. Simpson case. The prosecutor explained that he struck Veniremember No. 25 because he was "evasive, less than honest, less than candid." The prosecutor stated that he had no reason to strike Veniremember No. 25 before he received the information concerning Veniremember No. 25's comments about the government.

The trial judge found that the prosecutor's reason for striking Veniremember No. 25 was not racially motivated. We do not find that the trial judge's determination was clearly erroneous. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.