**Darrell Dwayne CHILES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–00–004–CR.**

Court of Appeals of Texas,
Waco.

Aug. 22, 2001.

514

David S. Barron, Bryan, for appellant.

William C. Bennett, Madison County Criminal District Attorney, Madisonville, for appellee.

Before Chief Justice DAVIS, and Justices VANCE and GRAY.

## OPINION

GRAY, Justice.

Darrell Dewayne Chiles was indicted for the attempted capital murder of his estranged wife. The indictment contained three enhancement paragraphs, alleging non-sequential prior convictions of aggravated robbery and murder. Chiles pled not guilty and raised the defense of insanity. The jury rejected the defense and convicted him of the lesser included offense of kidnaping. During the punishment phase, Chiles pled true to the enhancement counts of the indictment. He also requested an instruction regarding diminished capacity as a mitigating factor in the jury charge on punishment, which was denied by the court. The jury assessed the maximum punishment of 20 years in prison.

Chiles raises two issues on appeal:

1. The court abused its discretion in overruling his *Batson* challenge; and

2. The court abused its discretion in overruling his request for an instruction on diminished capacity at the punishment phase of the trial.

We affirm.

## THE *BATSON* CHALLENGE

After the jury was selected, Chiles, who is black, objected that the State had used peremptories to strike the only two black members of the panel. At the hearing on this challenge, the prosecutor testified that he felt that during the State's voir dire, Juror Number 6 was having trouble understanding the concepts of law—especially regarding insanity and witness testimony. He struck the other black venireperson because of the possible influence of her daughter's prior experience with the criminal justice system. Defense counsel did not cross-examine the prosecutor regarding his reasons and simply asked that Juror Number 6 be placed on the jury because the State had not shown that there was a race-neutral explanation for the strike. The court denied the request, finding that the reasons for both strikes appeared to be racially neutral. Chiles now complains only of the exclusion of Juror Number 6, claiming that the record (1) establishes disparate treatment of similar jurors by the State and (2) belies the State's claim that Number 6 did not understand the legal concepts of the insanity defense and conviction based upon the testimony of one eye-witness.

### Applicable law

■ It is constitutionally impermissible to exercise peremptory strikes on the basis of race. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To raise a *Batson* challenge, the opponent of a peremptory strike must make a prima facie showing of the proponent's discriminatory use of the strike. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Emerson v. State,* 851 S.W.2d 269, 273 (Tex.Crim.App. 1993). Once the opponent makes a prima facie showing, the proponent of the strike has the burden to produce a race-neutral explanation for the strike. *Purkett,* 115 S.Ct. at 1770–71, 131 L.Ed.2d at 839. If a race-neutral explanation is given, the opponent of the strike must prove purposeful racial discrimination. *Id.* The burden of persuasion regarding racial motivation never leaves the opponent of the strike; therefore, the race-neutral explanation given by the proponent of the strike is not required to be persuasive, but merely facially valid. *Id.*

■ The trial court's decision on whether the defendant has proved his *Batson* claim turns, in part, on his observations during the voir dire examination. As supervisor of the voir dire proceeding, the trial court is in a position to readily perceive discrepancies during the jury selection process. *Young v. State,* 826 S.W.2d 141, 145 (Tex.Crim.App.1991). Therefore, the court's determination must be accorded great deference on appeal. *See Chambers v. State,* 866 S.W.2d 9, 23 (Tex.Crim. App.1993). A trial court's finding that peremptory strikes were not racially motivated will be upheld on appeal so long as the finding is not "clearly erroneous" in the light most favorable to that ruling. *See Pondexter v. State,* 942 S.W.2d 577, 581 (Tex.Crim.App.1996). We have held that a decision is "clearly erroneous" if the review of the record leaves us with a firm and definite conviction that a mistake has been made. *Bryant v. State,* 923 S.W.2d 199, 208–09 (Tex.App.—Waco 1996, pet. ref'd).

### Application

■ We first consider whether the State met its burden of producing a race-neutral explanation for its strike against Number 6.[1] A race-neutral explanation is based on something other than the race of the venireperson. *Chambers,* 866 S.W.2d at 24 n. 16. Any reason offered by the State that is facially valid and not inherently discriminatory is sufficient to rebut the defendant's prima facie case of intentional discrimination. *Purkett,* 514 U.S. at 767–68, 115 S.Ct. at 1771(quoting *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991)). The State indicated that Number 6 was stricken because "When I was doing my voir dire and asking—I asked ... several questions and I felt like he was having trouble understanding the concepts of law that we're dealing with here, regarding insanity and also regarding witness testimony. And based on that, it was my impression that he was not understanding everything that we talked about. That's my basis for striking."[2] Having offered

---

1. We do not consider the issue of whether Chiles established a prima facie case of racial discrimination. Because the State did not object to the Court's failure to rule on this issue, it is now moot. *See Chambers v. State,* 866 S.W.2d 9, 23 (Tex.Crim.App.1993).

2. In his brief, Chiles includes this quote and bolds "my voir dire" without further comment. We assume that Chiles offers this as evidence that the record belies the reasons given by the prosecutor for his strikes. As the State points out, the prosecutor incorrectly attributed that impression to his voir dire alone when it should have been attributed to

an explanation void of any racially discriminatory intent on its face, the State met its burden of articulating a race-neutral explanation for the use of a peremptory strike against Number 6.

▉ Once the State provided race-neutral reasons for its peremptory strikes, the burden was on Chiles to rebut the State's reasons by showing that the explanation was merely a sham or pretext for discrimination. *Williams v. State*, 804 S.W.2d 95, 101–02 (Tex.Crim.App.1991). However, the record indicates that trial counsel did nothing more than to ask the prosecutor for his explanation and then to assert to the Court that the State had not met its burden of proof. Chiles now claims disparate treatment by the State and presents a comparative analysis between Number 6 and prospective jurors numbers 1, 13, and 36. The Court of Criminal Appeals has held that defendants are not required to make comparisons of the venirepersons at the trial level to have the same evidence considered on appeal. *Young*, 826 S.W.2d at 146. Therefore, we will consider this comparative analysis in addition to Number 6's performance during voir dire.

*Disparate treatment*

▉ Factors that may indicate disparate treatment of prospective jurors by the State include: (1) failing to question any of the minority venirepersons, yet striking them anyway; (2) striking minority venirepersons who gave answers similar to those of majority venirepersons who were not struck; or (3) striking minority venirepersons who had the same characteristics professionally, socially, religiously, etc. as majority venirepersons who were not struck. *Id.* at 145. These factors enter into the

trial court's assessment of the prosecutor's credibility and eventually the trial court's determination of the racial neutrality of the prosecutor's peremptory challenges. *Id.*

▉ Chiles points to three non-minority panel members, who were not subject to peremptory challenges by the State to illustrate evidence of disparate treatment by the State:

1. Prospective Juror Number 1 expressed concern regarding conviction based upon the testimony of only one eye-witness, asserting that he would have to hear both sides. Number 6 voiced a similar concern and said, "I need to hear both sides."

2. Prospective Juror Number 13 expressed confusion regarding the defense's burden to prove insanity by a preponderance of the evidence and asked if the jury would decide guilt or innocence based on temporary insanity. Without elaboration, Chiles claims that it is clear from the record that this panel member expressed more confusion and less understanding than did Number 6.

3. Prospective Juror Number 36 asked what would happen to the defendant if the jury found him not guilty by reason of insanity. Chiles asserts that this is comparable to Number 6's question regarding whether the defendant still was insane.

Reviewing the entire record, we find that there are some similarities between Number 6 and these three veniremembers as Chiles claims. However, there is one major difference. Not one of the three

---

the entire record on voir dire. We agree with the State that this case is similar to the *Ford* case, which holds that showing that the reason given was incorrect is not equal to prov-

ing that the reason was a pretext for a racially motivated strike. *See Ford v. State*, 1 S.W.3d 691, 693–94 (Tex.Crim.App.1999).

veniremembers indicates that he does not understand the law, but Number 6 does. In an exchange with defense counsel, Number 6 asked if he will have to follow the law "without understanding enough of it to render a verdict." We note that after the State explained to Number 13 the possible verdicts of guilty, not guilty, and not guilty by reason of insanity, she stated, "I understand." Similarly, Number 36 responded that he understood the Court's explanation that the jury need not be concerned with anything other than guilt or innocence. We are not left with a firm and definite conviction that a mistake has been made here. *Bryant*, 923 S.W.2d at 208–09.

*Number 6*

Furthermore, Chiles argues that the record rebuts the State's explanation that Number 6 was struck because he did not understand the legal concepts involving the insanity defense or a juror's ability to convict a defendant based on the testimony of one eye-witness. Chiles asserts that Number 6 asked thoughtful and intelligent questions in an attempt to clarify his understanding of the law: for example, whether Chiles still manifested symptoms of a mental disease at the time of trial and whether a doctor would testify at the trial. With respect to statements made by Number 6 that it would be hard to "make a decision off of one eyewitness" and that he would have to hear both sides, Chiles claims that Number 6 displayed no confusion or misunderstanding regarding the legal concept as explained by the State. However, Chiles does not provide any evidence that the State's reasons for striking Number 6 were a pretext for purposeful racial discrimination. *Williams v. State*, 804 S.W.2d at 101–02. Even if Chiles has shown that Number 6 did understand these legal concepts, Chiles has still failed to meet his burden of rebutting the State's race-neutral explanation.

Having examined the record and the comparative analysis offered by Chiles, we do not find that the Court's finding was clearly erroneous. Therefore, we overrule the first issue.

## INSTRUCTION ON DIMINISHED CAPACITY

During the guilt-innocence phase of the trial, Chiles produced evidence in support of his insanity defense. In its charge to the jury, the Court included an instruction regarding this defense. However, the jury rejected the defense when it found Chiles guilty of kidnaping. At the charge conference in the punishment phase, Chiles requested that the court include in the jury charge an instruction regarding diminished mental capacity at the time of the offense:

> You are instructed that, in assessing the defendant's punishment in this case, you may consider, but are not required to consider, defendant's diminished mental capacity at the time of the offense, if any.

> "Diminished mental capacity" means an abnormality of the functioning of the mind resulting from a mental disease or defect. "Depression" is a mental disease or defect.

The Court denied the request, but the charge did include the instruction that the jury could consider "all of the facts shown by the evidence admitted before you" in fixing the punishment. Chiles now argues that the Court abused its discretion in overruling his request for the instruction on diminished capacity and denying the jury the opportunity to consider his mental state at the time of the offense in assessing his punishment. We disagree.

A trial court abuses its discretion if it acts without reference to guiding principles or rules. *See Lyles v. State*, 850

S.W.2d 497, 502 (Tex.Crim.App.1993). In this case, we look to legislation and case law for guidance. The state legislature has specifically provided for mitigation of punishment in two instances. The Texas Code of Criminal Procedure allows for a specific instruction on mitigating evidence in capital cases. TEX.CODE CRIM. PROC. ART. 37.071. The Texas Penal Code provides for a jury instruction at punishment on mitigation due to temporary insanity caused by voluntary intoxication. TEX. PEN.CODE § 8.04. Furthermore, Chiles admits that the issue of whether a trial court errs in failing to instruct the jury on diminished capacity as a result of mental illness is one of first impression in Texas case law. Texas courts have addressed the issue of diminished capacity only with respect to the guilt-innocence phase of trial.[3] Based upon specific legislation and lack of case law, it appears that had the court *granted* the request of Chiles, it would have acted without reference to guiding principles or rules. Therefore, we cannot find that the court abused its discretion in denying the request for the instruction on diminished capacity.

In addition, Chiles contends that he has been denied due course of law protection under the Texas Constitution because the jury could not consider diminished capacity due to mental disease at the punishment phase. Article 1, Section 19 of the Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of law of the land." As Chiles points out, "due course of law of the land" means "that punish-ment for a crime will be imposed only by and through a trial in accordance with law." *McFarlane v. State,* 158 Tex.Crim. 194, 254 S.W.2d 136, 137 (1953). In his brief, Chiles asks us to provide him with due course of law by rewriting the "law of the land" to allow the mitigation charge under Section 8.04 to apply to diminished capacity as well as insanity caused by voluntary intoxication. Although it may appear inequitable to Chiles that one who chooses to use alcohol is allowed a charge in mitigation of punishment while one who suffers from a mental disease is not, the fact remains that Chiles was tried in accordance with the law as it stands. We agree with the State that it is the job of the legislature to write and enact laws. Thus, we decline to do so.

Therefore, we overrule the second issue.

## CONCLUSION

Having overruled both issues, we affirm the trial court's judgment.

---

**3.** As a general rule, proof that an accused suffers from a mental weakness or emotional disturbance short of the inability to distinguish right from wrong is not admissible at the guilt-innocence stage of trial. *Cowles v. State,* 510 S.W.2d 608, 609 (Tex.Crim.App. 1974). There is some disagreement regarding the "Cowles exception." In dicta, the *Cowles* court commented that evidence of mental infirmity not rising to the level of insanity could be admissible to negate a specific intent element. However, this controversy is not relevant to this case.