Steve Hardy v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-132-CR

STEVE HARDY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Steve Hardy appeals his conviction for aggravated assault with a deadly weapon.  A jury found Hardy guilty and assessed punishment at twenty-five years’ imprisonment.  In three issues, Hardy contends that the trial court erred by overruling his 
Batson
(footnote: 1) challenge, by admitting into evidence a kitchen knife used in the commission of the offense, and by overruling his motion for directed verdict.  We will affirm.

II.  Factual Background

On June 22, 2001, Hardy became agitated after an argument with his wife, Georgia, and threatened to kill her while placing a knife to her throat. Georgia eventually persuaded Hardy to allow her to use the bathroom; however, he ordered her to leave the door open.  Nonetheless, fearing for her safety, Georgia closed the door and locked herself in the bathroom.  Hardy immediately began kicking the door and ordering Georgia to open it.  When she refused, Hardy began stabbing the door with the knife.  After a brief period of time, Hardy was able to knock down the bathroom door.  Hardy then forced Georgia to go to the master bedroom and to remove her clothes.  Over the course of several hours, Hardy cut Georgia with the knife numerous times.  According to Georgia, during the assault, Hardy cut her on her breast, hand, arm, and buttocks.  Thereafter, Hardy ordered Georgia to drive him to a bus station. However, after determining that a bus was not available for several hours, Georgia dropped Hardy at a nearby gas station to meet a friend.  Georgia then returned home and called the police to report the assault.

III.  
Batson 
Challenge

In his first issue, Hardy contends that the trial court erred by overruling his 
Batson 
challenge and by denying his request for additional peremptory strikes because the State failed to offer race-neutral reasons for the exercise of its strikes.
(footnote: 2)  The State, however, maintains that the trial court properly overruled Hardy’s 
Batson 
challenge because it provided facially valid, race-neutral reasons for the exercise of its strikes, and Hardy failed to meet his burden to demonstrate purposeful discrimination.

The Equal Protection Clause of the Fourteenth Amendment prohibits the State from exercising its peremptory strikes to exclude persons from a jury solely based on their race.  
Ladd v. State
, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000); s
ee also 
Tex. Code Crim. Proc. Ann.
 art. 35.261(a) (Vernon 1989) (also prohibiting peremptory strikes based on race).  A
 three-step process is used to determine whether the State exercised its peremptory strikes in a discriminatory manner.  
Batson, 
476 U.S. at 93-98, 106 S. Ct. at 1721-24; 
Tex. Code Crim. Proc. Ann.
 art. 35.261.  First, a defendant must make a prima facie showing that the State exercised its strikes in a discriminatory manner.  
Jasper v. State, 
61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  A defendant establishes a prima facie case by showing facts and circumstances that raise an inference that the State used its strikes to exclude prospective jurors on the basis of race.  
Batson
, 476 U.S. at 96, 106 S. Ct. at 1722.  

Once a defendant makes a prima facie showing of discrimination, the burden of production shifts to the State to demonstrate a race-neutral explanation for the exercise of its strikes.  
Jasper
, 61 S.W.3d at 421.  The State’s explanation need not be persuasive or even plausible; rather, any explanation offered by the State is sufficient to rebut the defendant's prima facie showing of discrimination, so long as the explanation is facially valid and not inherently discriminatory.  
Yarborough v. State
, 983 S.W.2d 352, 354 (Tex. App.—Fort Worth 1998, no pet.); 
see Purkett v. Elem
, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (1995).  If the State provides a race-neutral explanation for its strikes, the defendant has the burden to rebut the State's explanation by establishing that the explanation was merely a sham or pretext for purposeful discrimination.  
Pondexter v. State
, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 825 (1997).  The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the defendant.  
Purkett
, 514 U.S. at 768, 115 S. Ct. at 1771.

When reviewing a 
Batson
 challenge on appeal, we must determine whether the trial court's decision was “clearly erroneous” by examining the evidence in the light most favorable to the trial court's ruling.  
Yarborough
, 983 S.W.2d at 354.  A ruling is clearly erroneous when, after searching the record, we form a definite and firm conviction that a mistake has been committed.  
Hill v. State
, 827 S.W.2d 860, 865 (Tex. Crim. App.), 
cert. denied
, 506 U.S. 905 (1992).  The trial court’s determination as to whether a defendant carried his burden to prove purposeful discrimination is a finding of fact that must be accorded great deference on appeal.  
See Chambers v. State
, 866 S.W.2d 9, 23 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1100 (1994).  Therefore, we will not disturb the trial court's decision on appeal absent some evidence in the record to rebut the State's race-neutral explanations.  
Yarborough
, 983 S.W.2d at 354.

In the instant case, Hardy complains that jurors 8 and 24 were struck by the State based solely on their race.  Hardy also argues that by failing to exercise its final peremptory strike, the State effectively struck juror 36 from the panel on the basis of race as well.  In response, the State maintains that it provided race-neutral reasons for the exercise and non exercise of its peremptory strikes, and the defense failed to sufficiently rebut the State’s explanations.

After the jury was selected, in order to make a prima facie showing of discrimination, Hardy advised the trial court that he was African-American, that the jury, as composed, lacked any African-American members, and that the State had asked virtually no questions before striking, or eliminating through the non use of a strike, jurors 8, 24, and 36, who are African-American.  
See Batson, 
476 U.S. at 96, 106 S. Ct. at 1723 (recognizing that to establish prima facie case of racial discrimination, defendant must prove that he is member of a cognizable racial group, that the State used its strikes to exclude members of defendant’s race from the jury panel, and that facts and circumstances raise an inference of purposeful discrimination). 
 Based upon the facts and circumstances presented by Hardy, the trial court found that Hardy was a member of a cognizable racial group and requested that the State provide race-neutral reasons for the exercise or non exercise of its strikes.

In response,
(footnote: 3) the State explained that it struck juror 8, Mr. Valentine, because “[h]e also had . . . two shirts unbuttoned half-way down.  Appeared to be out of it when he was asked the question.  I did have him raise and stand several times.”
(footnote: 4)  It is well-settled law that the appearance of a prospective juror is a race-neutral explanation for exercising peremptory strikes.  
See Purkett
, 514 U.S. at 768-69, 115 S. Ct. at 1771 (recognizing that long, unkempt hair, a mustache, and a beard constituted race-neutral reasons); 
Alexander v. State
, 866 S.W.2d 1, 8-9 (Tex. Crim. App. 1993) (recognizing that wearing sunglasses constituted a race-neutral reason), 
cert. denied
, 511 U.S. 1100 (1994); 
Ealoms v. State
, 983 S.W.2d 853, 856 (Tex. App.—Waco 1998, pet. ref'd) (recognizing that a pink hat, a snakeskin belt, and a “Bad Boys Club” jacket constituted race-neutral reasons). A prospective juror’s demeanor and “body-english” also constitute race-neutral explanations for exercising a peremptory strike.  
Anderson v. State
, 758 S.W.2d 676, 680 (Tex. App.—Fort Worth 1988, pet. ref’d); 
see also Yarborough
, 983 S.W.2d at 357-58 (upholding as race-neutral subjective explanations about prospective juror’s demeanor because such explanations were undisputed). Moreover, a parties “statement about an occurrence in the courtroom, which was made for the purposes of the record, recorded by the court reporter, undisputed by the opposing counsel, and unquestioned and unqualified by the judge in whose presence the statement was made, establishes the occurrence for purposes of the appellate record.”  
Yarborough
, 983 S.W.2d at 357.

In the instant case, with regard to the State’s explanations for striking Mr. Valentine, neither Hardy nor the trial court disputed the State’s observations of Mr. Valentine’s appearance or demeanor.  In fact, the trial court confirmed that Mr. Valentine was repeatedly asked to speak up by the court “because he was either not attentive or out of it.“  Thus, the State’s observations regarding Mr. Valentine’s appearance and demeanor are established for the record.

Because the explanations given by the State were facially valid and not inherently discriminatory, Hardy had the burden to establish that the explanations were a pretext for purposeful discrimination.  
See Pondexter
, 942 S.W.2d at 581.  No evidence exists in the record rebutting the explanations given by the State or showing that these explanations were a mere pretext for racial discrimination.  
See Yarborough
, 983 S.W.2d at 358. 

With respect to juror 24, Ms. McIntosh, the State explained that it struck her from the panel because, when asked a question regarding the mental state of “intentionally or knowingly,” she appeared to not understand the legal concepts being described.
(footnote: 5)  A prospective juror’s inability to understand relevant legal concepts provides a race-neutral explanation for exercising a peremptory strike.  
See Chiles v. State
, 57 S.W.3d 512, 516-17 (Tex. App.—Waco, 2001
, 
pet. dism’d) (recognizing that prospective juror’s inability to understand the concepts of insanity defense and single-witness testimony constituted race-neutral reason)
; Williams v. State
, 939 S.W.2d 703, 706-07 (Tex. App.—Eastland 1997, no pet.) (recognizing that prospective juror’s inability to understand concept of “beyond a reasonable doubt” constituted race-neutral reason).  As a result, Hardy had the burden to show that the State’s explanation for striking Ms. McIntosh was merely pretextual.  The record contains no evidence or explanation sufficiently rebutting the State’s articulated race-neutral reason for striking Ms. McIntosh. 
 See Williams
, 939 S.W.2d at 706 (acknowledging that, if a defendant fails to rebut the State’s explanation for exercising a peremptory strike, a reviewing court should afford deference to the trial court’s finding concerning the State’s motivation for the strike unless clearly erroneous).  

In support of his 
Batson
 claim, Hardy also pointed to the State’s non exercise of its final peremptory strike as proof that the State was exercising its strikes in a discriminatory manner.  Specifically, Hardy made the following complaint with respect to juror 36, Mr. Russell, “I would point out for the record, then, by not using that extra challenge, we would have reached--potentially reached juror number 36.  And by not exercising that challenge, that is, in effect, a strike of 36.”  In response, the State explained that it failed to exercise its final strike because it inadvertently struck juror 4 twice, and as a result, when the error was discovered, the State was unable to use its remaining strike due to time constraints.  The State also indicated that it would have struck juror 42 from the panel if it had exercised its final peremptory strike.  The record contains no evidence or explanation rebutting the State’s aforementioned race-neutral explanation for the non exercise of its final peremptory strike.  
See 
Pitte v. State
, 102 S.W.3d 786, 791 (Tex. App.—Texarkana 2003, no pet.)
 
(stating that “[w]hen the trial court is offered no evidence in rebuttal of the State's race-neutral explanation, the reviewing court is not in a position to say that it feels a definite and firm conviction that the trial court made a mistake”).

Ultimately, the record fails to demonstrate that the State exercised its peremptory strikes in a discriminatory manner.
  Therefore, after examining all of the evidence in the light most favorable to the trial court’s decision, we conclude that Hardy did not prove that the State’s race-neutral explanations for the exercise of its peremptory strikes were a pretext for purposeful discrimination.  
See Pitte
, 102 S.W.3d at 791; 
Contreras v. State
, 59 S.W.3d 362, 363-64 (Tex. App.—Houston [1
st
 Dist.] 2001, no pet.). 
 As a result, we hold that the trial court’s denial of Hardy’s 
Batson 
challenge and his request for additional peremptory strikes was not clearly erroneous. 
 Accordingly, we overrule Hardy’s first issue.

IV.  Admission of Evidence

In his second issue, Hardy contends that the trial court erred by admitting into evidence State’s Exhibit #29, a kitchen knife allegedly used in the commission of the offense, because the prejudicial effect of the knife substantially outweighed its probative value in violation of Rule 403 of the Texas Rules of Evidence.  The State maintains that in order to obtain a conviction based on the charge in the indictment, it was required to prove that Hardy used a deadly weapon in the commission of the assault.  Thus, the State contends that because a knife is not per se a deadly weapon, the probative value of the knife outweighed the danger of any unfair prejudice.

Texas Rule of Evidence 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. 
Tex. R. Evid.
 403.  However, under rule 403, only “unfair” prejudice provides the basis for exclusion of relevant evidence.  
Montgomery v. State
, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh’g). 
 Unfair prejudice does not mean “that the evidence merely injures the opponent’s case -- the central point of offering evidence.”  
Rogers v. State
, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999).  Rather, unfair prejudice arises only from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one.  
Id
.  

Rule 403 favors admissibility, and a presumption exists that relevant evidence will be more probative than prejudicial.  
Hayes v. State
, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).  Consequently, the party opposing admissibility of the evidence must not only demonstrate the negative attributes of the evidence but must also show that these negative attributes “substantially outweigh” any probative value.  
Montgomery
, 810 S.W.2d at 377.

Moreover, because the trial court is in a superior position to gauge the impact of relevant evidence, a reviewing court is to reverse the trial court's decision “rarely and only after a clear abuse of discretion.”  
Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).  Specifically, the reviewing court should refrain from disturbing the trial court's decision on appeal, so long as the decision falls within the “zone of reasonable disagreement.”  
Salazar v. State
, 38 S.W.3d 141, 151 (Tex. Crim. App.), 
cert. denied
, 534 U.S. 855 (2001). 

Under Texas law,
 visual, real, or demonstrative evidence is admissible where it tends to resolve an issue at trial and has relevance to the case, unless the prejudicial effect of the evidence substantially outweighs the probative value.  
Simmons v. State
, 622 S.W.2d 111, 113 (Tex. Crim. App. [Panel Op.] 1981); 
Posey v. State
, 763 S.W.2d 872, 875 (Tex. App.—Houston [14
th
 Dist.] 1988, pet. ref’d)
;
 
see also
 
Foster v. State
, 779 S.W.2d 845, 861 (Tex. Crim App. 1989) (holding weapon that was used or allegedly used during the commission of an offense was admissible),
 cert. denied
, 494 U.S. 1039 (1990). 
 Evidence is relevant if it has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  
Tex. R. Evid.
 401.

In the instant case, Hardy was charged with two counts of aggravated assault with a deadly weapon, to wit:  a knife.  Therefore, in order to obtain a conviction on either count, the State necessarily had to prove that the knife Hardy used during the commission of the assault constituted a deadly weapon. 
See Blain v. State
, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983) (recognizing that a knife is not per se a deadly weapon). 
 
The State could prove that the knife in question was a deadly weapon by showing the size, shape, and sharpness of the knife, the manner of its use, and its capacity to produce death or serious bodily injury.  
Id
.; 
Johnson v. State
, 919 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, pet. ref’d).  

During trial, the State introduced into evidence State’s Exhibit #26, a photograph of a knife on top of a dresser.  Georgia testified that the picture accurately depicted the crime scene and that the knife in the photograph was the “big” knife used during the assault.
(footnote: 6)  According to Officer Ramsey, a crime scene search specialist for the Arlington Police Department, the knife in question was recovered from the top of a dresser in Hardy’s bedroom the morning after the assault.  Officer Ramsey testified that he transported the weapon to the police department, processed it for fingerprints, and then sealed the knife in a package that was labeled with the offense, a description of the knife, the date of the offense, and the case number.  He also testified that the package containing the knife had not been opened since he personally sealed it and that State’s Exhibit #29 was the same knife he recovered from Hardy’s bedroom.
(footnote: 7) 

The knife was clearly relevant to prove an allegation in the charging instrument—that Hardy used or exhibited a “deadly weapon” in assaulting his wife.  
See Manning v. State
, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). Moreover, while the knife was potentially injurious to Hardy’s case, it was not unfairly prejudicial because it did 
not have undue tendency to suggest that a decision be made on an improper basis.  
See Rogers
, 991 S.W.2d at 266. 
 
In fact, the knife could not have distracted the jury from the indicted offense because it was proof specific to the charged offense.  
See Manning
, 114 S.W.2d at 928.  As a result, we conclude that the probative value of the knife was not substantially outweighed by its prejudicial effect.  Accordingly, we hold that the trial court did not abuse its discretion by admitting the knife into evidence.  We overrule Hardy’s second issue. 

V.  Directed Verdict

In his third issue, Hardy contends that the trial court erred by overruling his motion for directed verdict because there was insufficient evidence to support the jury’s verdict as to every element of the offense beyond a reasonable doubt.  Specifically, Hardy appears to complain that Georgia’s decision to return home to call the police after Hardy released her, rather than go to a nearby police station to report the assault, renders the evidence insufficient to support his conviction.  In response, the State maintains that the evidence is sufficient to support the jury’s verdict because the jury could have reasonably found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt.

A challenge based on a trial court’s denial of a motion for directed verdict is an attack upon the legal sufficiency of the evidence to support the conviction.
(footnote: 8)  
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S.844 (1997).  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).
  Consequently, we may not overturn the jury’s verdict on appeal unless it is irrational or unsupported by proof beyond a reasonable doubt.  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

In the instant case, Hardy was charged with two counts of aggravated assault with a deadly weapon.  The first count alleged that Hardy

intentionally or knowingly cause[d] bodily injury to Georgia Hardy by striking her with [his] hand, or by cutting her with a knife, or by pushing her with [his] hand and [he used] or exhibit[ed] a deadly weapon during the commission of the assault, to-wit:  a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

The second count alleged that Hardy “intentionally or knowingly threaten[ed] imminent bodily injury to Georgia Hardy and [he used] or exhibit[ed] a deadly weapon during the commission of the assault, to-wit:  a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury.”  Both counts were submitted to the jury, and the jury returned a general verdict of guilt for the offense of aggravated assault with a deadly weapon.  Consequently, so long as the evidence is sufficient to sustain the conviction under at least one of the two counts, we must uphold the jury’s verdict of guilt.  
See Rabbani v. State
, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) (recognizing that when the jury is authorized to convict on any one of several theories or methods of commission of the same offense and returns a general verdict of guilt, it does not matter that evidence is insufficient to sustain one or more of the theories, so long as evidence is sufficient to sustain conviction under at least one theory), 
cert. denied
, 509 U.S. 926 (1993); 
Patterson v. State
, 46 S.W.3d 294, 300 (Tex. App.—Fort Worth 2001, no pet.) (same).

At trial, Georgia testified that, during the commission of the assault, Hardy slapped her with his hand, pushed her down, and cut her with the knife several times.  She also testified that Hardy threatened to kill her on various occasions during the assault and that she believed he was going to kill her. Moreover, she identified State’s Exhibit #26 as a photograph of the knife used during the assault.

During its case-in-chief, the State introduced photographs showing multiple cuts on Georgia’s body, as well as photographs depicting the crime scene into evidence.  In addition, the jury was able to view the actual knife used during the assault to determine if it constituted a deadly weapon.  Further, Officer Mike Higgins, an Arlington Police Officer with twenty-four years of experience, testified that the knife used during the assault was capable of causing serious bodily injury or death.

On appeal, Hardy appears to argue that the evidence is insufficient to support the jury’s verdict because Georgia’s actions following the assault were not the actions of a credible witness.  He asserts that “even in an upset and dazed state of mind, it is completely incredible to pass a police station and return home, allowing the escape of [the] alleged assailant.”

At trial, Georgia testified that she did not immediately go to the nearby police station after dropping Hardy off at the gas station because she had blood on her clothes.  Because the jury, as the trier of fact, was the sole judge of Georgia’s credibility, it was free to believe her testimony.  
See Jones v. State
, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 832 (1997). Georgia’s failure to immediately drive to the police station to report the crime is not a circumstance that renders the evidence legally insufficient to support Hardy’s conviction.

Viewing the evidence in the light most favorable to the jury’s verdict, we hold that the evidence is legally sufficient to support Hardy’s conviction.  Based on the testimony and the evidence presented at trial, 
a rational trier of fact could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt
.  Therefore, the trial court did not err by overruling Hardy’s motion for directed verdict.  We overrule Hardy’s third issue.

VI.  Conclusion

Having overruled all of Hardy’s issues, we affirm the trial court’s judgment. 

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: April 8, 2004

FOOTNOTES
1:
Batson v. Kentucky
, 476 U.S. 79, 106 S. Ct. 1712 (1986).

2:
In his brief, Hardy requests that we formulate a new test to determine when peremptory strikes were exercised on the basis of race.  However, because we are bound by precedent, we decline to do so.  
See Taulung v. State
, 979 S.W.2d 854, 857 (Tex. App.—Waco 1998, no pet.).

3:
Once the State offers a race-neutral explanation for its peremptory strikes and the trial court issues a ruling on the ultimate question of purposeful discrimination, the preliminary issue of whether the defendant made a prima facie case is moot. 
Malone v. State
, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996).  Accordingly, in the instant case, we need not address whether Hardy established a prima facie of racial discrimination.

4:
The State also indicated that a criminal history check revealed that Mr. Valentine had prior arrests for family violence and driving while intoxicated, but that he had failed to reveal these arrests on his jury questionnaire and again during voir dire.  However, because Mr. Valentine’s criminal history record and his jury questionnaire are not part of our record, we will not consider these explanations on appeal.  
See Vargas v. State
, 838 S.W.2d 552, 556-57 (Tex. Crim. App. 1992) (holding that jury questionnaires could not be considered by an appellate court in evaluating a 
Batson 
claim because they were never before the trial court).  
But cf. Cornish v. State
, 848 S.W.2d 144, 145 (Tex. Crim. App. 1993) (holding that jury questionnaires, even though not formally admitted into evidence, could be considered on appeal where the trial court and the parties treated such questionnaires as admitted).

5:
The State also explained that Ms. McIntosh had indicated on her jury questionnaire that her son had been abused by police officers and that her daughter had been arrested for forgery.  However, as previously mentioned, we will not consider these explanations because her jury questionnaire is not part of the record on appeal. 
 See Vargas
, 838 S.W.2d at 556-57.

6:
Georgia also indicated that Hardy took a “small” knife in the car when she drove him to meet his friend.  However, according to Georgia, she did not know the whereabouts of the “small” knife.

7:
Prior to offering the actual knife as evidence, the State attempted to introduce into evidence State’s Exhibit #27, a close-up photograph of the knife. However, Hardy objected as to the admissibility of the evidence, complaining that the photograph was cumulative of other evidence and that the probative value of the photograph was more prejudicial than probative.  After a discussion off the record, the trial court sustained Hardy’s objection without indicating the grounds for its ruling.

8:
Hardy requests that this court formulate a new standard to review the legal sufficiency of the evidence.  Because we are constrained by precedent, we decline to do so.  
See Taulung
, 979 S.W.2d at 857.