**Opinion filed September 2, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00314-CR

_____

## ALFRED LEE RICE JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR51461**

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Alfred Lee Rice Jr. with two counts of sexual assault of a child.  Both counts were enhanced for punishment as a habitual offender by prior felony convictions.  The jury found Appellant guilty of both counts and assessed his punishment at confinement for twenty-five years for each count.  The trial court sentenced him accordingly.  We modify and affirm.

*Issues*

On appeal, Appellant raises two issues and argues that (1) the trial court erred in overruling Appellant's *Batson*[1] challenge and (2) the trial court erred when it assessed court-appointed attorney's fees against him.

*Background Facts*

As Appellant does not challenge the sufficiency of the evidence on appeal, we will only recount those facts necessary to address the issues. During the State's voir dire, the following exchange occurred between the State's attorney and a prospective juror:

Q: So, Mr. Lewis, Number 10, do you agree with the law as it is, that a child under 17 can't consent to sex with an adult?

A: I agree with it, but I have a question about --

Q: Sure.

A: Like it said -- it said cause to -- caused the mouth of --

Q: Uh-huh.

A: Does that mean -- does that mean it matters who initiated it?

Q: It does not. And that's a good question.

What he asked was, does it matter who initiated it?

Would that matter to you, if you were listening to the evidence?

A: No, I could be impartial.

Q: Okay. Because the law says that a child under 17 can't consent to sex, which means even if they initiate it, okay?

And so my further question for you is, what if that kid was at a party? Does that -- does that change anything in your mind about being able to follow the law?

---

[1]*See Batson v. Kentucky*, 476 U.S. 79 (1986).

A: No.

Later, near the end of the State's voir dire, the State spoke with this prospective juror, Mr. Lewis, again:

Q: Is there anybody that can think of anything that we haven't brought up yet that you think, oh, she should hear about this?

Mr. Lewis, Number 10.

A: I would say violence, whether the incident was violent.

Q: So the facts of the case as to how violent the incident was? Okay.

After the jury members were selected, but before the jury was sworn, Appellant raised a *Batson* challenge and stated that, of the three African-American jury panel members, the State used its peremptory strikes to strike two of them: panel member no. 10, Mr. Lewis, and panel member no. 26, Ms. Smith. The State responded that Ms. Smith was stricken because of a comment she made that trauma means "theatrical reactions" and that she did not have any children.

The State's reason for using a strike on Mr. Lewis was the following: "Your Honor, Number 10, Daryl Lewis, was not smart. He did not answer -- he didn't seem to understand the questions that he was being asked and he did not come across, I believe, as intelligent enough to understand the scientific material that's going to be printed -- presented." In response, Appellant's counsel stated that "saying that somebody is dumb and they shouldn't be on there -- and that is the -- basically the definition of racial animus, that he's been stricken just because of that." The trial court then overruled Appellant's *Batson* challenge.

*Discussion*

## 1. The trial court did not err when it overruled Appellant's *Batson* challenge.

In his first issue, Appellant argues that the trial court erred in overruling his *Batson* challenge. Appellant specifically argues that the trial court should have sustained his *Batson* challenge as to panel member no. 10, Mr. Lewis, as the State's reason for using the peremptory strike on Mr. Lewis was a pretext for discrimination.

*Standard of Review*

When we review a trial court's ruling on a *Batson* challenge, we examine the evidence in the light most favorable to the trial court's ruling and determine whether the record supports the trial court's findings. *See Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim. App. 1988). Our review of the record is "highly deferential" to the trial court. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We review the record of a *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling. "We will not disturb a trial court's ruling on a *Batson* issue unless it is clearly erroneous." *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). A ruling is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex. Crim. App. 1989). Exercise of a peremptory challenge against a venireperson on the ground that they did not seem to understand the questions asked by counsel is a race-neutral reason to strike. "In assaying the record for clear error, the reviewing court should consider the entire record of voir dire; it need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention so long

4

as those arguments or considerations are manifestly grounded in the appellate record." *Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013).

*Analysis*

In *Batson v. Kentucky*, 476 U.S.79, 89 (1986), the United States Supreme Court determined that it is a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution for a litigant to exercise peremptory challenges based on the juror's race. *Guzman v. State*, 85 S.W.3d 242, 245–46 (Tex. Crim. App. 2002); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.261(b) (West 2006). A "*Batson* challenge" involves a three-step analysis. First, the opponent of the peremptory strike, in this case the defendant, must make a prima facie showing of purposeful discrimination by offering facts and other relevant circumstances to raise an inference that the proponent of the strike, in this case the State, exercised its peremptory strikes to exclude potential jurors for their race, ethnicity, or gender. *Batson*, 476 U.S. at 96; *Guzman*, 85 S.W.3d at 246. However, once the trial court rules on the ultimate question of intentional discrimination, this preliminary issue of whether the defendant made a prima facie showing becomes moot. *Hernandez v. New York*, 500 U.S. 352, 359 (1991); *Malone v. State*, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996).

The second step involves two parts: A and B. Part A shifts the burden of production to the State to rebut the prima facie case of discrimination by offering "a neutral explanation for the challenges," while Part B requires the defendant to carry the burden of persuasion that the neutral explanation given is pretext. *Keeton v. State*, 724 S.W.2d 58, 65 (Tex. Crim. App. 1987); *see Batson*, 476 U.S. at 97–98. A neutral explanation "means an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360. If the State offers facially valid explanations for its strikes, it has rebutted the presumption of purposeful discrimination. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991).

"Whether the race-neutral explanation should be *believed* is purely a question of fact for the trial court. But, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *United Rentals N. Am., Inc. v. Evans*, 608 S.W.3d 449, 477 (Tex. App.—Dallas 2020, pet. filed) (citation omitted). Ultimately, the opponent of the strike must prove purposeful discrimination by a preponderance of the evidence. *Blackman*, 414 S.W.3d at 764–65.

In the final step, the trial court must "determine whether despite the State's explanation, the defendant has established purposeful discrimination." *Keeton*, 724 S.W.2d at 65 (court must rule on whether opponent proved purposeful discrimination); *see Williams*, 804 S.W.2d at 101 (burden on opponent to rebut race neutral explanation); *see also Guzman*, 85 S.W.3d at 254. After it considers the credibility of the State, the content of the explanation, any rebuttal evidence or argument offered by the defendant, the trial court must make a finding of fact concerning whether the State engaged in purposeful discrimination in the exercise of its peremptory challenges. *Keeton*, 724 S.W.2d at 65. We "give[ ] great deference" to that finding. *Id.*

Here, as previously stated, after the jury was chosen but before it was sworn, Appellant objected to the State's use of its peremptory strikes against two African-American members of the jury panel. Without obtaining a ruling on whether Appellant had made a prima facie case for discrimination, the State offered its nondiscriminatory reasons for the strikes.

Thus, because the preliminary issue of whether Appellant made his prima facie case is moot, we begin our review at the second step of the *Batson* analysis. *See Hernandez*, 500 U.S. at 359. Concerning panel member no. 10, Mr. Lewis, the attorney for the State explained that she did not believe that Mr. Lewis understood the questions that were asked and also that he did not appear intelligent enough to

understand the scientific material that would be presented at trial. Lack of intelligence, or an inability to understand attorney voir dire questions, is an acceptable race-neutral reason for the use of a peremptory strike. *Moore v. State*, 265 S.W.3d 73, 82–83 (Tex. App.—Houston [1st Dist.] 2008), *pet. dism'd*, 286 S.W.3d 371 (Tex. Crim. App. 2009); *see also Chiles v. State*, 57 S.W.3d 512, 516–18 (Tex. App.—Waco 2001, pet. dism'd) (concluding that venireperson's inability to understand legal principles is race-neutral justification for striking venireperson); *Williams v. State*, 939 S.W.2d 703, 706–07 (Tex. App.—Eastland 1997, no pet.) (holding that prosecutor established race-neutral reason for strike when juror had difficulty understanding "beyond a reasonable doubt" standard); *C.E.J. v. State*, 788 S.W.2d 849, 857 (Tex. App.—Dallas 1990, writ denied) (stating that venireperson's inattentiveness may be sufficiently race-neutral reason to justify use of peremptory strike). In his brief, however, Appellant argues that this race-neutral reason was merely pretext and that he in turn met his burden of proving purposeful discrimination. We disagree.

In response to the State's explanation, Appellant relied solely on the possibility that a lack of intelligence was not a proper race-neutral explanation. He identified no other facts or circumstances to support his claim of discrimination. He did not cross-examine the prosecutor, present any evidence to otherwise rebut the State's explanations, or ask for an opportunity to do so. While the record does reflect that Mr. Lewis did appear to understand the single direct question that the State asked him, we do not believe that this is enough to find that the trial court's ruling was clearly erroneous. This is especially because it is the trial court who had the opportunity to view the demeanor of each panel member and evaluate his or her credibility, and it is the trial court who ultimately is in the better position to evaluate the strikes used. *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex. Crim. App. 1993). We note also that in the latter portion of the voir dire, prospective juror no. 10 did

not appear to understand a question propounded to the venire by counsel for the State. The prospective juror's response was related but not on point, but the question itself, as asked, was unclear. Reviewing the entirety of the voir dire examination, considering the context of the questions propounded and responses thereto, and reviewing the record for the objections and responses to the State's exercise of its peremptory strikes, we hold that Appellant did not meet his burden to rebut the State's race-neutral explanations for its strikes and show that they were merely pretextual. We overrule Appellant's first issue.

## 2. The trial court did err when it assessed court-appointed attorney's fees against Appellant.

In his second issue, Appellant claims that the trial court erred when it assessed court-appointed attorney's fees against him—as he had been found to be indigent.[2] The State concedes that attorney's fees should not have been assessed against Appellant. Appellant submitted an affidavit of indigence to the trial court stating that he did not have the money to hire an attorney for his representation. Appellant was appointed an attorney for his representation, suggesting that the trial court had made a finding of indigence. Further, the record contains no transcription of hearing suggesting that the court had re-examined the indigent status of Appellant.

When a trial court has found that a defendant is indigent, he is presumed to remain indigent for the remainder of the proceedings unless there has been a material change in the defendant's financial circumstances. CRIM. PROC. art. 26.04(p) (West Supp. 2020). Except upon evidence that there has been a material change since the indigency finding and that an appellant is no longer indigent, the trial court cannot assess court-appointed attorney's fees against an appellant. *Cates v. State*, 402

---

[2]Appellant in his brief also mentions that he was assessed "court reporter record fees," (ApantBr20) but the record does not reflect this charge. No such charge is shown in the 3rd Amended Bill of Cost that is in the clerk's record. Furthermore, the trial court granted Appellant's motion for a free reporter's record.

S.W.3d 250, 251–52 (Tex. Crim. App. 2013). A careful review of the record reveals no order entered or finding by the trial court that Appellant's financial circumstances had changed or that Appellant was able to repay the costs of court-appointed counsel. Accordingly, there is nothing in the record to rebut Appellant's presumed continued indigency and justify the assessment of attorney's fees against him under Article 26.05(g). *See* CRIM. PROC. art. 26.05(g). We therefore sustain Appellant's second issue with regard to the imposition of attorney's fees, and we modify the trial court's judgments and the district clerk's bill of cost to delete the assessment of attorney's fees. *See Ramirez v. State*, 432 S.W.3d 373, 377 (Tex. App.—San Antonio 2014, pet. ref'd).

### This Court's Ruling

Based on the foregoing, we modify the trial court's judgments and the bill of cost to eliminate the imposition of attorney's fees against Appellant. As modified, we affirm the judgments of the trial court.

W. BRUCE WILLIAMS
JUSTICE

September 2, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.