Larry YARBOROUGH, Appellant,

v.

The STATE of Texas, State.

No. 2–92–241–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 28, 1998.

Charles H. Roach, Fort Worth, for Appellant.

Tim Curry, District Attorney, Charles Mallin, Steven W. Conder, Terry Barlow, and Susan Hargis, Assistant District Attorneys, Fort Worth, for Appellee.

1. Because of our disposition of that point, we did not reach Yarborough's complaints about the re-

Before CAYCE, DAY and HOLMAN, JJ.

## OPINION ON REMAND

SAM DAY, Justice.

A jury found Larry Yarborough guilty of delivery of an illegal substance (cocaine). *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 1992 & Supp.1999). The trial court assessed punishment at five years' confinement. On original appeal, Yarborough contended in a single point that the trial court erred in overruling his complaint that the State had excluded nine minorities from the jury solely on the basis of their race, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This court reversed the conviction and remanded for a new trial, holding that there was no evidence in the record to substantiate the prosecutor's subjective reason for striking venire member Mark Martinez (i.e., that Martinez was inattentive and his body language indicated he was unhappy to be called for jury service).[1] *See Yarborough v. State*, 868 S.W.2d 913, 915 (Tex.App.—Fort Worth 1994).

On the State's petition for discretionary review, the court of criminal appeals reversed our decision. *See Yarborough v. State*, 947 S.W.2d 892, 896 (Tex.Crim.App. 1997). The court of criminal appeals stated that, because neither Yarborough's attorney nor the trial court disputed the prosecutor's characterization of Martinez's behavior, the record supported a finding that Martinez had exhibited the demeanor described by the prosecutor. *See id.* The court of criminal appeals concluded that the prosecutor's subjective statement was not insufficient as a matter of law to rebut Yarborough's prima facie case, and remanded the case to us for further review in light of established *Batson* jurisprudence. *See id.* We now reconsider our earlier opinion and affirm the trial court's judgment.

## THE LAW

 In*Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per cu-

maining eight venire members who were struck.

riam), the United States Supreme Court employed a three-step process to determine whether a prosecutor exercised his peremptory strikes on the basis of race: (1) the opponent of a peremptory challenge must make out a prima facie case of racial discrimination; (2) the burden then shifts to the proponent of the strike to come forward with a race-neutral explanation; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. *See Id.* at 767, 115 S.Ct. at 1770–71. Although the Supreme Court suggested in *Batson* that the State's race-neutral reason had to be case-based, *see* 476 U.S. at 98, 106 S.Ct. at 1724, the *Purkett* Court explained that:

> The second step of this process does not demand an explanation that is persuasive, or even plausible. [Instead], "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Purkett,* 514 U.S. at 767–68, 115 S.Ct. at 1771 (quoting *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991)). Thus, *any* reason offered by the State, as long as it is facially valid and not inherently discriminatory, is sufficient to rebut the defendant's prima facie case of intentional discrimination. *See id.* The defendant then must establish that the race-neutral reasons articulated by the State were in fact a pretext for purposeful discrimination. *See Pondexter v. State,* 942 S.W.2d 577, 581 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997).

## STANDARD OF REVIEW

■ When reviewing a *Batson* claim on appeal, we must determine whether the trial court's findings were "clearly erroneous" by examining the evidence in the light most favorable to the trial court's ruling. *See id.* The trial court's determination is a finding of fact that must be accorded great deference on appeal. *See Chambers v. State,* 866

S.W.2d 9, 23 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). "Additionally, 'absent some other evidence which rebuts the State's raceneutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate....'" *Pondexter,* 942 S.W.2d at 581 (quoting *Chambers,* 866 S.W.2d at 25).

## THE CHALLENGED STRIKES

Forty-two people were on the venire panel called in Yarborough's case. Because one person was excused for cause, the last person reached for jury service was number 33. The parties agreed that ten of the thirty-three people were african-american, three of whom served on the jury. The parties also agreed that the State used peremptory strikes to remove seven African–Americans and two Hispanics.[2] Yarborough challenged each of the State's nine strikes on minority members and the trial court held a *Batson* hearing.

### Venire member Shelby Means

During voir dire, Shelby Means said that he knew Yarborough and was "pretty close" to some of Yarborough's family members. Although Means originally indicated that he could be fair and impartial despite these relationships, on further examination he said that if he rendered a guilty verdict, he would feel bad about facing Yarborough's family and that would influence his decision in the case. When pressed by defense counsel, Means said that he could reach a verdict based on the evidence.

The prosecutor said he struck Means because Means was acquainted with Yarborough and his family, and would have a difficult time rendering a guilty verdict and then facing Yarborough's family. Yarborough's attorney did not rebut the State's reason.

### Venire member Humphrey Griggs

Humphrey Griggs failed to complete the areas on his juror questionnaire regarding his political orientation, his educational background, and his beliefs regarding the goals of

---

2. The State also struck one Caucasian.

the criminal justice system in assessing punishment for a convicted felon.[3] Griggs noted on his questionnaire that he was under a doctor's care and answered "no" to the question, "Have you ever been arrested for or charged with a crime?"

The prosecutor stated that he struck Griggs because he had not been completely honest regarding his prior criminal history, he had not fully completed his questionnaire, and because he was under a doctor's care. To support his belief that Griggs had not been completely candid, the prosecutor stated that he had run a criminal history on each venire member and had discovered that Griggs was arrested in 1974 for unlawfully carrying a prohibited weapon. The computer printout on Griggs is included in the record on appeal.

In rebuttal, Yarborough's attorney pointed out that the State had failed to specifically question Griggs on the individual questions he left blank. He also argued that there was no evidence that the Humphrey Griggs in the State's computer printout was the same man serving on the venire panel, and that the State had failed to ask about his criminal record.

### Venire member Mark Eugene Martinez

During voir dire, the prosecutor questioned Mark Eugene Martinez at length, asking him nine individual questions about his occupation, his previous jury service, and a relative who worked for a law firm. The prosecutor said that he struck Martinez because he had "poor facial expressions. He's very inattentive, looks unhappy to be here, body language, posture was such that just made him feel he was uncomfortable. The only way I can characterize it is he had a very long, unhappy face, mouth down-turned at the corners, eyes downcast. And he was, quite frankly, that way not only to the State, but when being addressed by Defense Counsel."

The defense did not refute the State's characterization of Martinez, but instead argued that the prosecutor had asked Martinez only one "significant question" during voir dire. He also argued that because Martinez had been a juror previously and ranked punishment as the number one goal of the criminal justice system, there was no reason to strike him other than the fact that he was Hispanic.

### Venire member Jeanette Price

The prosecutor said that he struck Jeanette Price because she had failed to properly fill out the juror questionnaire correctly and completely, and this indicated that she was unable to follow simple instructions. The prosecutor also said he struck Price because although she was the mother of two children, she had never been married, and thus did not have the moral qualifications that he wanted on his jury panel.

Yarborough's attorney responded that "the State has chosen to make a moral judgment on a black lady who says she's single with two children, and I think that's a purely racially motivated reason to strike."

### Venire member Leroy Terry, Sr.

Leroy Terry, Sr. failed to complete his questionnaire, leaving blank spaces next to questions about his political preference, whether he or a family member had ever worked as a police officer or in law enforcement, and whether he had ever been arrested for or charged with a crime. He also failed to rank the goals of the criminal justice system and simply placed an "X" next to each category of television programs that he was asked to rank from 1 to 10, according to his interest.

The prosecutor said that he struck Terry because he had not been completely candid concerning his prior criminal history and because he had not fully completed his questionnaire. The prosecutor produced a computer printout that he had run on Terry, which indicated that someone with the same name had been tried and acquitted on a murder charge in 1974. The printout is part of the record on appeal.

---

3. The questionnaires asked venire members to rank from one to three the following purposes of the criminal justice system, with one being the most important and three being the least important: (1) rehabilitation, (2) deterrence, and (3) punishment.

The defense argued that there was no evidence that the person with the criminal record was the same person as venire member Terry. He also contended that the prosecutor had failed to ask Terry whether the person in the computer printout was him, and had not asked "any meaningful" questions concerning Terry's qualifications as a juror.

### Venire member Cecilia Thomas

Cecilia Thomas indicated in her questionnaire that she had a master's degree in psychology and social work, and was currently employed by the Texas Department of Human Services as a Child Protective Services supervisor.

The prosecutor stated he struck Thomas because she had an educational background in social work and psychology and because she worked for the Texas Department of Human Services. He said that in his experience as a prosecutor, individuals with backgrounds in psychology and social work tend to be "defense jurors," i.e., jurors who were more likely to believe the testimony of defendants than police officers. The prosecutor also indicated that he struck her because, "I talked to her at length and . . . she gave very clipped, cut-off kind of answers. I just didn't get the feeling that she really wanted to be a juror in this particular situation."

In rebuttal, defense counsel argued that Thomas was educated and "imminently qualified to be on the jury, and we submit . . . that the only reason to strike this woman was racial."

### Venire member Timothy Kyles

Timothy Kyles failed to complete his juror questionnaire, leaving blank the spaces for political preference, educational background, and employment history. When he ranked the type of television programs that he preferred, on a scale from one to ten, he ranked every type as either a one or a ten. He also indicated that his religious preference was "Basp."

The prosecutor said that he exercised a peremptory strike on Kyles because he had failed to indicate his educational background or political preference, because he had misspelled his religious preference (assuming that Kyles intended to spell "Baptist"), and because his response to the question on his favorite television programs indicated that he either didn't understand the question or he was polarized (i.e., really hated or really liked something, but nothing in between). The prosecutor also said that Kyles appeared to be mentally disabled and have less-than-average intelligence.

The defense responded that the prosecutor had failed to make any meaningful inquiries regarding the missing responses in Kyles's questionnaire. He also argued that the State contradicted itself by striking Kyles because he was uneducated and Thomas because she was too educated, thus revealing its purposeful racial discrimination.

### Venire member Lillie Marie Godbolt

During voir dire, Lillie Marie Godbolt testified that she had two nephews that had been convicted and were in jail for drug offenses. Initially, Godbolt said that "perhaps [I] might be bias[ed] because I'm strongly against [narcotic drugs]." When asked if she could keep separate her nephews' situations and Yarborough's case, she answered, "Perhaps I could." On further questioning, she said she could be fair in this case and did not think her sympathy for her nephews would affect her decision making.

The prosecutor said that he struck Goldbolt because she had two nephews in jail for drug offenses and because it was his policy to strike anyone on the panel who had relatives in confinement for the same offense the defendant was being tried for.

Defense counsel responded that, "The record indicated [Godbolt] had very strong feelings against drug offenses. Again, she's obviously an educated, intelligent woman by examining the questionnaire. Everything is filled in appropriately, very neatly. She answered the questions. . . . There is no other legitimate reason to strike her, the fact that she has someone—knows someone in jail. . . . I think she's quite qualified to be on the jury and struck because of race."

*Venire member Victor Flores*

In his jury questionnaire, Victor Flores responded with: (1) an obviously incorrect birth date ("7–23–92"), (2) "N/A" in the space provided for his employment, (3) "Chaoto" in the space for religious preference (an apparent misspelling or abbreviation of "Catholic"), and (4) "N/A" by the space for "Liberal" where he was supposed to indicate his political preference.

The prosecutor said that he struck Flores because of the mistakes and omissions in his juror questionnaire. He also said that he struck Flores because, "he didn't seem, when I was speaking and attempted to make eye contact with him a couple of times, wouldn't meet my gaze. It didn't really appear that he was interested in what I had to say."

The defense contended that the State struck Flores because he failed to fully fill out his questionnaire while striking other venire members because they had filled out their questionnaire completely, and thus must have struck him because he was Hispanic.[4]

### RACE–NEUTRAL REASONS

■■■ Based on our review of the evidence, the State gave facially valid, race-neutral reasons to strike each venire member in this case and these reasons are supported by the record. The State included the individual questionnaires in the record to verify the reasons offered by the State and attached the criminal background reports on Griggs and Terry. Furthermore, regarding the prosecutor's subjective reasons for striking Martinez (acted inattentive and unhappy to be there), Thomas (clipped answers; acted as though she did not want to be a juror) and Flores (acted disinterested), each of these reasons was undisputed by opposing counsel and the trial court. As the court of criminal appeals stated in *Yarborough*, "A counsel's statement about an occurrence in the courtroom, which was made for the purposes of the record, recorded by the court reporter, undisputed by the opposing counsel, and unquestioned and unqualified by the judge in

whose presence the statement was made, establishes the occurrence for purposes of the appellate record." 947 S.W.2d at 895. Thus, the State's observations regarding these venire members' behavior and demeanor was established for the record.

Because none of the reasons given by the State were inherently racially discriminatory or particular to any race, the State met its burden of providing facially-neutral reasons for exercising each of the challenged strikes. Thus, we must determine whether Yarborough met his burden of proof to establish that the State's reasons were mere pretext to purposeful discrimination. In other words, we must decide whether the trial court erred at step three of the *Batson* inquiry, in finding that the reasons given by the State were not racially motivated.

■■■ Absent some evidence in the record to rebut the State's race-neutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate. *See Pondexter*, 942 S.W.2d at 581; *Chambers*, 866 S.W.2d at 25. To determine whether the trial court's findings are supported by the record, we must review (1) the racial makeup of the venire, (2) the voir dire examination, (3) the prosecutor's explanations, (4) the appellant's rebuttal and impeaching evidence, (5) the quantity and quality of either party's examination of the challenged venire member, (6) whether the *Batson* movant cross-examined the counsel who made the peremptory challenge, and (7) whether the judge was asked to rule on any conflict of fact. *See Yarborough*, 947 S.W.2d at 896; *Chambers*, 866 S.W.2d at 23. In addition, where the reason given involves a venire member's demeanor or appearance, the court should also consider whether the *Batson* movant rebutted the description of the venire member and whether the *Batson* movant proved that venire members of similar demeanor were not struck. *See Yarborough*, 947 S.W.2d at 896.

In this case, the trial court made the following findings in the record:

---

4. On appeal, Yarborough does not cite to any place in the record where the prosecutor struck a

juror because he or she filled out the questionnaire completely, nor do we find such reference.

- the ratio of African–Americans on the venire panel was almost 25 percent,[5]
- the ratio of African–Americans seated on the jury was 25 percent,[6]
- ninety percent of the State's peremptory strikes were exercised against minorities,
- the venire panel had a larger number of African–Americans on it than usual for Tarrant County, and
- the defendant, Yarborough, was African–American.

After the defense raised a *Batson* challenge, the prosecutor stated: "Because of the numbers ... my co-counsel and I discussed this, and we realize, quite frankly, it doesn't look good. It looks bad, but we feel we have articulable reasons, articulable non-racial reasons for each one of our strikes." He later continued his explanation:

> I'd like to state for the record, Judge, that co-counsel and myself did not enter into these strikes lightly. We're very cognizant of how this will probably look to the Court and the Court of Appeals, if they ever look this over. We have no allusions [sic] about that. We also didn't enter the decision lightly.

> [O]ur office policy on this matter is very strict. It's pretty clear, almost an—there's an unwritten rule in our office. If any of us ever get reversed—reversed on a *Batson* charge, we may be looking for another job.... [C]o-counsel and myself talked this [over], but we reached the conclusion that [we] wouldn't be doing our duties as prosecutors if we didn't strike the people that we had legitimately raised reasons for striking, even if that turns out to be the majority of our strikes.

A ruling on a *Batson* objection is essentiality a determination of the prosecutor's credibility, which we are to review with great deference. *See Morris v. State*, 940 S.W.2d 610, 612 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1278, 117 S.Ct. 2461, 138 L.Ed.2d 218 (1997). Without the benefit of observing the prosecutor in this case, we cannot say that the trial court clearly erred in determining that the prosecutor had not engaged in purposeful discrimination. Although we agree that using ninety percent of the State's peremptory strikes on racial minorities "looks bad," this is not, as a matter of law, sufficient to overcome the strong deference that we are required to pay to the trial court's findings. In this case, the defense never cross-examined the prosecutor to invalidate any of the grounds given by the State and failed to dispute any of the State's descriptions of specific venire member's demeanor and appearance. Regarding the venire members who were struck because of their criminal backgrounds, Yarborough's attorney did not ask to review background checks on other venire members, nor did he offer any evidence that the State had run these checks only on minorities.

Although the defense did argue that the State had engaged in disparate treatment by striking venire member Thomas and not venire member James Simpson because both were involved in a "helping" profession,[7] his argument is unpersuasive. When the State has offered more than one race-neutral reason for its challenge, the fact that other acceptable jurors possess one or more of the objectionable attributes is not sufficient to establish disparate treatment. *See Pondexter*, 942 S.W.2d at 582. In this case, the prosecutor explained that he did not strike Simpson because he was employed as an aircraft assembler for General Dynamics and thus "had a ground in the real world." He also said that Simpson was easy to talk to and his demeanor was enjoyable. The prosecutor said that in addition to Thomas's objectionable profession (as a social worker), he struck her because she was "stern-faced" and he was unable to establish any rapport with her.

Ultimately, Yarborough fails to present any argument other than the fact that the State used nine of its ten peremptory strikes on minority members to support his conten-

---

5. Of forty-two venire members, ten were African–American.

6. Of the twelve jury members, three were African–American.

7. Simpson is a minister.

tion that the State's racially neutral explanations were mere pretext to its purposeful discrimination. In view of the record in this case, including the State's clear and detailed explanations, Yarborough's failure to formulate a convincing argument to rebut the State's facially neutral reasons, and accounting the due deference to the trial court's findings, we cannot say that the trial court's decision was clearly erroneous.

We overrule Yarborough's point and affirm the trial court's judgment.