COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-132-CR
 
  
STEVE 
HARDY                                                                      APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
 
        Appellant 
Steve Hardy appeals his conviction for aggravated assault with a deadly weapon. 
A jury found Hardy guilty and assessed punishment at twenty-five years’ 
imprisonment. In three issues, Hardy contends that the trial court erred by 
overruling his Batson [1] challenge, by 
admitting into evidence a kitchen knife used in the commission of the offense, 
and by overruling his motion for directed verdict. We will affirm.
II. 
Factual Background
        On 
June 22, 2001, Hardy became agitated after an argument with his wife, Georgia, 
and threatened to kill her while placing a knife to her throat. Georgia 
eventually persuaded Hardy to allow her to use the bathroom; however, he ordered 
her to leave the door open. Nonetheless, fearing for her safety, Georgia closed 
the door and locked herself in the bathroom. Hardy immediately began kicking the 
door and ordering Georgia to open it. When she refused, Hardy began stabbing the 
door with the knife. After a brief period of time, Hardy was able to knock down 
the bathroom door. Hardy then forced Georgia to go to the master bedroom and to 
remove her clothes. Over the course of several hours, Hardy cut Georgia with the 
knife numerous times. According to Georgia, during the assault, Hardy cut her on 
her breast, hand, arm, and buttocks. Thereafter, Hardy ordered Georgia to drive 
him to a bus station. However, after determining that a bus was not available 
for several hours, Georgia dropped Hardy at a nearby gas station to meet a 
friend. Georgia then returned home and called the police to report the assault.
III. 
Batson Challenge
        In 
his first issue, Hardy contends that the trial court erred by overruling his Batson 
challenge and by denying his request for additional peremptory strikes because 
the State failed to offer race-neutral reasons for the exercise of its strikes.[2]  The State, however, maintains that the trial court 
properly overruled Hardy’s Batson challenge because it provided 
facially valid, race-neutral reasons for the exercise of its strikes, and Hardy 
failed to meet his burden to demonstrate purposeful discrimination.
        The 
Equal Protection Clause of the Fourteenth Amendment prohibits the State from 
exercising its peremptory strikes to exclude persons from a jury solely based on 
their race. Ladd v. State, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999), cert. 
denied, 529 U.S. 1070 (2000); see also Tex. Code Crim. Proc. Ann. art. 
35.261(a) (Vernon 1989) (also prohibiting peremptory strikes based on race). A 
three-step process is used to determine whether the State exercised its 
peremptory strikes in a discriminatory manner. Batson, 476 U.S. at 93-98, 
106 S. Ct. at 1721-24; Tex. Code Crim. Proc. Ann. art. 35.261. 
First, a defendant must make a prima facie showing that the State exercised its 
strikes in a discriminatory manner. Jasper v. State, 61 S.W.3d 413, 421 
(Tex. Crim. App. 2001). A defendant establishes a prima facie case by showing 
facts and circumstances that raise an inference that the State used its strikes 
to exclude prospective jurors on the basis of race. Batson, 476 U.S. at 
96, 106 S. Ct. at 1722.
        Once 
a defendant makes a prima facie showing of discrimination, the burden of 
production shifts to the State to demonstrate a race-neutral explanation for the 
exercise of its strikes. Jasper, 61 S.W.3d at 421. The State’s 
explanation need not be persuasive or even plausible; rather, any explanation 
offered by the State is sufficient to rebut the defendant's prima facie showing 
of discrimination, so long as the explanation is facially valid and not 
inherently discriminatory. Yarborough v. State, 983 S.W.2d 352, 354 (Tex. 
App.—Fort Worth 1998, no pet.); see Purkett v. Elem, 514 U.S. 765, 768, 
115 S. Ct. 1769, 1771 (1995). If the State provides a race-neutral explanation 
for its strikes, the defendant has the burden to rebut the State's explanation 
by establishing that the explanation was merely a sham or pretext for purposeful 
discrimination. Pondexter v. State, 942 S.W.2d 577, 581 (Tex. Crim. App. 
1996), cert. denied, 522 U.S. 825 (1997). The ultimate burden of 
persuasion regarding racial motivation rests with, and never shifts from, the 
defendant. Purkett, 514 U.S. at 768, 115 S. Ct. at 1771.
        When 
reviewing a Batson challenge on appeal, we must determine whether the 
trial court's decision was “clearly erroneous” by examining the evidence in 
the light most favorable to the trial court's ruling. Yarborough, 983 
S.W.2d at 354. A ruling is clearly erroneous when, after searching the record, 
we form a definite and firm conviction that a mistake has been committed. Hill 
v. State, 827 S.W.2d 860, 865 (Tex. Crim. App.), cert. denied, 506 
U.S. 905 (1992). The trial court’s determination as to whether a defendant 
carried his burden to prove purposeful discrimination is a finding of fact that 
must be accorded great deference on appeal. See Chambers v. State, 866 
S.W.2d 9, 23 (Tex. Crim. App. 1993), cert. denied, 511 U.S. 1100 (1994). 
Therefore, we will not disturb the trial court's decision on appeal absent some 
evidence in the record to rebut the State's race-neutral explanations. Yarborough, 
983 S.W.2d at 354.
        In 
the instant case, Hardy complains that jurors 8 and 24 were struck by the State 
based solely on their race. Hardy also argues that by failing to exercise its 
final peremptory strike, the State effectively struck juror 36 from the panel on 
the basis of race as well. In response, the State maintains that it provided 
race-neutral reasons for the exercise and non exercise of its peremptory 
strikes, and the defense failed to sufficiently rebut the State’s 
explanations.
        After 
the jury was selected, in order to make a prima facie showing of discrimination, 
Hardy advised the trial court that he was African-American, that the jury, as 
composed, lacked any African-American members, and that the State had asked 
virtually no questions before striking, or eliminating through the non use of a 
strike, jurors 8, 24, and 36, who are African-American. See Batson, 476 
U.S. at 96, 106 S. Ct. at 1723 (recognizing that to establish prima facie case 
of racial discrimination, defendant must prove that he is member of a cognizable 
racial group, that the State used its strikes to exclude members of 
defendant’s race from the jury panel, and that facts and circumstances raise 
an inference of purposeful discrimination). Based upon the facts and 
circumstances presented by Hardy, the trial court found that Hardy was a member 
of a cognizable racial group and requested that the State provide race-neutral 
reasons for the exercise or non exercise of its strikes.
        In 
response,[3]  the State explained that it struck 
juror 8, Mr. Valentine, because “[h]e also had . . . two shirts unbuttoned 
half-way down. Appeared to be out of it when he was asked the question. I did 
have him raise and stand several times.”[4]  It 
is well-settled law that the appearance of a prospective juror is a race-neutral 
explanation for exercising peremptory strikes. See Purkett, 514 U.S. at 
768-69, 115 S. Ct. at 1771 (recognizing that long, unkempt hair, a mustache, and 
a beard constituted race-neutral reasons); Alexander v. State, 866 S.W.2d 
1, 8-9 (Tex. Crim. App. 1993) (recognizing that wearing sunglasses constituted a 
race-neutral reason), cert. denied, 511 U.S. 1100 (1994); Ealoms v. 
State, 983 S.W.2d 853, 856 (Tex. App.—Waco 1998, pet. ref'd) (recognizing 
that a pink hat, a snakeskin belt, and a “Bad Boys Club” jacket constituted 
race-neutral reasons). A prospective juror’s demeanor and “body-english” 
also constitute race-neutral explanations for exercising a peremptory strike. Anderson 
v. State, 758 S.W.2d 676, 680 (Tex. App.—Fort Worth 1988, pet. ref’d); see 
also Yarborough, 983 S.W.2d at 357-58 (upholding as race-neutral subjective 
explanations about prospective juror’s demeanor because such explanations were 
undisputed). Moreover, a parties “statement about an occurrence in the 
courtroom, which was made for the purposes of the record, recorded by the court 
reporter, undisputed by the opposing counsel, and unquestioned and unqualified 
by the judge in whose presence the statement was made, establishes the 
occurrence for purposes of the appellate record.” Yarborough, 983 
S.W.2d at 357.
        In 
the instant case, with regard to the State’s explanations for striking Mr. 
Valentine, neither Hardy nor the trial court disputed the State’s observations 
of Mr. Valentine’s appearance or demeanor. In fact, the trial court confirmed 
that Mr. Valentine was repeatedly asked to speak up by the court “because he 
was either not attentive or out of it.“ Thus, the State’s observations 
regarding Mr. Valentine’s appearance and demeanor are established for the 
record.
        Because 
the explanations given by the State were facially valid and not inherently 
discriminatory, Hardy had the burden to establish that the explanations were a 
pretext for purposeful discrimination. See Pondexter, 942 S.W.2d at 581. 
No evidence exists in the record rebutting the explanations given by the State 
or showing that these explanations were a mere pretext for racial 
discrimination. See Yarborough, 983 S.W.2d at 358.
        With 
respect to juror 24, Ms. McIntosh, the State explained that it struck her from 
the panel because, when asked a question regarding the mental state of 
“intentionally or knowingly,” she appeared to not understand the legal 
concepts being described.[5]  A prospective 
juror’s inability to understand relevant legal concepts provides a 
race-neutral explanation for exercising a peremptory strike. See Chiles v. 
State, 57 S.W.3d 512, 516-17 (Tex. App.—Waco, 2001, pet. dism’d) 
(recognizing that prospective juror’s inability to understand the concepts of 
insanity defense and single-witness testimony constituted race-neutral reason); Williams 
v. State, 939 S.W.2d 703, 706-07 (Tex. App.—Eastland 1997, no pet.) 
(recognizing that prospective juror’s inability to understand concept of 
“beyond a reasonable doubt” constituted race-neutral reason). As a result, 
Hardy had the burden to show that the State’s explanation for striking Ms. 
McIntosh was merely pretextual. The record contains no evidence or explanation 
sufficiently rebutting the State’s articulated race-neutral reason for 
striking Ms. McIntosh. See Williams, 939 S.W.2d at 706 (acknowledging 
that, if a defendant fails to rebut the State’s explanation for exercising a 
peremptory strike, a reviewing court should afford deference to the trial 
court’s finding concerning the State’s motivation for the strike unless 
clearly erroneous).
        In 
support of his Batson claim, Hardy also pointed to the State’s non 
exercise of its final peremptory strike as proof that the State was exercising 
its strikes in a discriminatory manner. Specifically, Hardy made the following 
complaint with respect to juror 36, Mr. Russell, “I would point out for the 
record, then, by not using that extra challenge, we would have 
reached--potentially reached juror number 36. And by not exercising that 
challenge, that is, in effect, a strike of 36.” In response, the State 
explained that it failed to exercise its final strike because it inadvertently 
struck juror 4 twice, and as a result, when the error was discovered, the State 
was unable to use its remaining strike due to time constraints. The State also 
indicated that it would have struck juror 42 from the panel if it had exercised 
its final peremptory strike. The record contains no evidence or explanation 
rebutting the State’s aforementioned race-neutral explanation for the non 
exercise of its final peremptory strike. See Pitte v. State, 102 S.W.3d 
786, 791 (Tex. App.—Texarkana 2003, no pet.) (stating that “[w]hen the trial 
court is offered no evidence in rebuttal of the State's race-neutral 
explanation, the reviewing court is not in a position to say that it feels a 
definite and firm conviction that the trial court made a mistake”).
        Ultimately, 
the record fails to demonstrate that the State exercised its peremptory strikes 
in a discriminatory manner. Therefore, after examining all of the evidence in 
the light most favorable to the trial court’s decision, we conclude that Hardy 
did not prove that the State’s race-neutral explanations for the exercise of 
its peremptory strikes were a pretext for purposeful discrimination. See 
Pitte, 102 S.W.3d at 791; Contreras v. State, 59 S.W.3d 362, 363-64 
(Tex. App.—Houston [1st Dist.] 2001, no pet.). As a result, we hold 
that the trial court’s denial of Hardy’s Batson challenge and his 
request for additional peremptory strikes was not clearly erroneous. 
Accordingly, we overrule Hardy’s first issue.
IV. 
Admission of Evidence
        In 
his second issue, Hardy contends that the trial court erred by admitting into 
evidence State’s Exhibit #29, a kitchen knife allegedly used in the commission 
of the offense, because the prejudicial effect of the knife substantially 
outweighed its probative value in violation of Rule 403 of the Texas Rules of 
Evidence. The State maintains that in order to obtain a conviction based on the 
charge in the indictment, it was required to prove that Hardy used a deadly 
weapon in the commission of the assault. Thus, the State contends that because a 
knife is not per se a deadly weapon, the probative value of the knife outweighed 
the danger of any unfair prejudice.
        Texas 
Rule of Evidence 403 provides that even relevant evidence may be excluded if its 
probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. 
However, under rule 403, only “unfair” prejudice provides the basis for 
exclusion of relevant evidence. Montgomery v. State, 810 S.W.2d 372, 389 
(Tex. Crim. App. 1991) (op. on reh’g). Unfair prejudice does not mean “that 
the evidence merely injures the opponent’s case -- the central point of 
offering evidence.” Rogers v. State, 991 S.W.2d 263, 266 (Tex. Crim. 
App. 1999). Rather, unfair prejudice arises only from evidence that has an undue 
tendency to suggest that a decision be made on an improper basis, commonly an 
emotional one. Id.
        Rule 
403 favors admissibility, and a presumption exists that relevant evidence will 
be more probative than prejudicial. Hayes v. State, 85 S.W.3d 809, 815 
(Tex. Crim. App. 2002). Consequently, the party opposing admissibility of the 
evidence must not only demonstrate the negative attributes of the evidence but 
must also show that these negative attributes “substantially outweigh” any 
probative value. Montgomery, 810 S.W.2d at 377.
        Moreover, 
because the trial court is in a superior position to gauge the impact of 
relevant evidence, a reviewing court is to reverse the trial court's decision 
“rarely and only after a clear abuse of discretion.” Mozon v. State, 
991 S.W.2d 841, 847 (Tex. Crim. App. 1999). Specifically, the reviewing court 
should refrain from disturbing the trial court's decision on appeal, so long as 
the decision falls within the “zone of reasonable disagreement.” Salazar 
v. State, 38 S.W.3d 141, 151 (Tex. Crim. App.), cert. denied, 534 
U.S. 855 (2001).
        Under 
Texas law, visual, real, or demonstrative evidence is admissible where it tends 
to resolve an issue at trial and has relevance to the case, unless the 
prejudicial effect of the evidence substantially outweighs the probative value. Simmons 
v. State, 622 S.W.2d 111, 113 (Tex. Crim. App. [Panel Op.] 1981); Posey 
v. State, 763 S.W.2d 872, 875 (Tex. App.—Houston [14th Dist.] 
1988, pet. ref’d); see also Foster v. State, 779 S.W.2d 845, 861 
(Tex. Crim App. 1989) (holding weapon that was used or allegedly used during the 
commission of an offense was admissible), cert. denied, 494 U.S. 1039 
(1990). Evidence is relevant if it has the tendency to make the existence of any 
fact that is of consequence to the determination of the action more probable or 
less probable than it would be without the evidence. Tex. R. Evid. 401.
        In 
the instant case, Hardy was charged with two counts of aggravated assault with a 
deadly weapon, to wit: a knife. Therefore, in order to obtain a conviction on 
either count, the State necessarily had to prove that the knife Hardy used 
during the commission of the assault constituted a deadly weapon. See Blain 
v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983) (recognizing that a 
knife is not per se a deadly weapon). The State could prove that the knife in 
question was a deadly weapon by showing the size, shape, and sharpness of the 
knife, the manner of its use, and its capacity to produce death or serious 
bodily injury. Id.; Johnson v. State, 919 S.W.2d 473, 477 (Tex. 
App.—Fort Worth 1996, pet. ref’d).
        During 
trial, the State introduced into evidence State’s Exhibit #26, a photograph of 
a knife on top of a dresser. Georgia testified that the picture accurately 
depicted the crime scene and that the knife in the photograph was the “big” 
knife used during the assault.[6]  According to 
Officer Ramsey, a crime scene search specialist for the Arlington Police 
Department, the knife in question was recovered from the top of a dresser in 
Hardy’s bedroom the morning after the assault. Officer Ramsey testified that 
he transported the weapon to the police department, processed it for 
fingerprints, and then sealed the knife in a package that was labeled with the 
offense, a description of the knife, the date of the offense, and the case 
number. He also testified that the package containing the knife had not been 
opened since he personally sealed it and that State’s Exhibit #29 was the same 
knife he recovered from Hardy’s bedroom.[7]
        The 
knife was clearly relevant to prove an allegation in the charging 
instrument—that Hardy used or exhibited a “deadly weapon” in assaulting 
his wife. See Manning v. State, 114 S.W.3d 922, 928 (Tex. Crim. App. 
2003). Moreover, while the knife was potentially injurious to Hardy’s case, it 
was not unfairly prejudicial because it did not have undue tendency to suggest 
that a decision be made on an improper basis. See Rogers, 991 S.W.2d at 
266. In fact, the knife could not have distracted the jury from the indicted 
offense because it was proof specific to the charged offense. See Manning, 
114 S.W.2d at 928. As a result, we conclude that the probative value of the 
knife was not substantially outweighed by its prejudicial effect. Accordingly, 
we hold that the trial court did not abuse its discretion by admitting the knife 
into evidence. We overrule Hardy’s second issue.
V. 
Directed Verdict
        In 
his third issue, Hardy contends that the trial court erred by overruling his 
motion for directed verdict because there was insufficient evidence to support 
the jury’s verdict as to every element of the offense beyond a reasonable 
doubt. Specifically, Hardy appears to complain that Georgia’s decision to 
return home to call the police after Hardy released her, rather than go to a 
nearby police station to report the assault, renders the evidence insufficient 
to support his conviction. In response, the State maintains that the evidence is 
sufficient to support the jury’s verdict because the jury could have 
reasonably found the essential elements of aggravated assault with a deadly 
weapon beyond a reasonable doubt.
        A 
challenge based on a trial court’s denial of a motion for directed verdict is 
an attack upon the legal sufficiency of the evidence to support the conviction. [8] 
McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 
522 U.S.844 (1997). In reviewing the legal sufficiency of the evidence to 
support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have 
found the essential elements of the crime beyond a reasonable doubt. Jackson 
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. 
State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). This standard gives full 
play to the responsibility of the trier of fact to resolve conflicts in the 
testimony, to weigh the evidence, and to draw reasonable inferences from basic 
facts to ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. 
When performing a legal sufficiency review, we may not sit as a thirteenth 
juror, re-evaluating the weight and credibility of the evidence and, thus, 
substituting our judgment for that of the fact finder. Dewberry v. State, 
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000). Consequently, we may not overturn the jury’s verdict on appeal unless 
it is irrational or unsupported by proof beyond a reasonable doubt. Matson v. 
State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).
        In 
the instant case, Hardy was charged with two counts of aggravated assault with a 
deadly weapon. The first count alleged that Hardy
 
intentionally 
or knowingly cause[d] bodily injury to Georgia Hardy by striking her with [his] 
hand, or by cutting her with a knife, or by pushing her with [his] hand and [he 
used] or exhibit[ed] a deadly weapon during the commission of the assault, 
to-wit: a knife, that in the manner of its use or intended use was capable of 
causing death or serious bodily injury.
 
The 
second count alleged that Hardy “intentionally or knowingly threaten[ed] 
imminent bodily injury to Georgia Hardy and [he used] or exhibit[ed] a deadly 
weapon during the commission of the assault, to-wit: a knife, that in the manner 
of its use or intended use was capable of causing death or serious bodily 
injury.” Both counts were submitted to the jury, and the jury returned a 
general verdict of guilt for the offense of aggravated assault with a deadly 
weapon. Consequently, so long as the evidence is sufficient to sustain the 
conviction under at least one of the two counts, we must uphold the jury’s 
verdict of guilt. See Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. 
App. 1992) (recognizing that when the jury is authorized to convict on any one 
of several theories or methods of commission of the same offense and returns a 
general verdict of guilt, it does not matter that evidence is insufficient to 
sustain one or more of the theories, so long as evidence is sufficient to 
sustain conviction under at least one theory), cert. denied, 509 U.S. 926 
(1993); Patterson v. State, 46 S.W.3d 294, 300 (Tex. App.—Fort Worth 
2001, no pet.) (same).
        At 
trial, Georgia testified that, during the commission of the assault, Hardy 
slapped her with his hand, pushed her down, and cut her with the knife several 
times. She also testified that Hardy threatened to kill her on various occasions 
during the assault and that she believed he was going to kill her. Moreover, she 
identified State’s Exhibit #26 as a photograph of the knife used during the 
assault.
        During 
its case-in-chief, the State introduced photographs showing multiple cuts on 
Georgia’s body, as well as photographs depicting the crime scene into 
evidence. In addition, the jury was able to view the actual knife used during 
the assault to determine if it constituted a deadly weapon. Further, Officer 
Mike Higgins, an Arlington Police Officer with twenty-four years of experience, 
testified that the knife used during the assault was capable of causing serious 
bodily injury or death.
        On 
appeal, Hardy appears to argue that the evidence is insufficient to support the 
jury’s verdict because Georgia’s actions following the assault were not the 
actions of a credible witness. He asserts that “even in an upset and dazed 
state of mind, it is completely incredible to pass a police station and return 
home, allowing the escape of [the] alleged assailant.”
        At 
trial, Georgia testified that she did not immediately go to the nearby police 
station after dropping Hardy off at the gas station because she had blood on her 
clothes. Because the jury, as the trier of fact, was the sole judge of 
Georgia’s credibility, it was free to believe her testimony. See Jones v. 
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), cert. denied, 522 
U.S. 832 (1997). Georgia’s failure to immediately drive to the police station 
to report the crime is not a circumstance that renders the evidence legally 
insufficient to support Hardy’s conviction.
        Viewing 
the evidence in the light most favorable to the jury’s verdict, we hold that 
the evidence is legally sufficient to support Hardy’s conviction. Based on the 
testimony and the evidence presented at trial, a rational trier of fact could 
have found the essential elements of aggravated assault with a deadly weapon 
beyond a reasonable doubt. Therefore, the trial court did not err by overruling 
Hardy’s motion for directed verdict. We overrule Hardy’s third issue.
VI. 
Conclusion
        Having 
overruled all of Hardy’s issues, we affirm the trial court’s judgment.
  
   
                                                  SUE 
WALKER
                                                  JUSTICE
 
  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 8, 2004


NOTES
1.  
Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986).
2.  
In his brief, Hardy requests that we formulate a new test to determine when 
peremptory strikes were exercised on the basis of race. However, because we are 
bound by precedent, we decline to do so. See Taulung v. State, 979 S.W.2d 
854, 857 (Tex. App.—Waco 1998, no pet.).
3.  
Once the State offers a race-neutral explanation for its peremptory strikes and 
the trial court issues a ruling on the ultimate question of purposeful 
discrimination, the preliminary issue of whether the defendant made a prima 
facie case is moot. Malone v. State, 919 S.W.2d 410, 412 (Tex. Crim. App. 
1996). Accordingly, in the instant case, we need not address whether Hardy 
established a prima facie of racial discrimination.
4.  
The State also indicated that a criminal history check revealed that Mr. 
Valentine had prior arrests for family violence and driving while intoxicated, 
but that he had failed to reveal these arrests on his jury questionnaire and 
again during voir dire. However, because Mr. Valentine’s criminal history 
record and his jury questionnaire are not part of our record, we will not 
consider these explanations on appeal. See Vargas v. State, 838 S.W.2d 
552, 556-57 (Tex. Crim. App. 1992) (holding that jury questionnaires could not 
be considered by an appellate court in evaluating a Batson claim because 
they were never before the trial court). But cf. Cornish v. State, 848 
S.W.2d 144, 145 (Tex. Crim. App. 1993) (holding that jury questionnaires, even 
though not formally admitted into evidence, could be considered on appeal where 
the trial court and the parties treated such questionnaires as admitted).
5.  
The State also explained that Ms. McIntosh had indicated on her jury 
questionnaire that her son had been abused by police officers and that her 
daughter had been arrested for forgery. However, as previously mentioned, we 
will not consider these explanations because her jury questionnaire is not part 
of the record on appeal. See Vargas, 838 S.W.2d at 556-57.
6.  
Georgia also indicated that Hardy took a “small” knife in the car when she 
drove him to meet his friend. However, according to Georgia, she did not know 
the whereabouts of the “small” knife.
7.  
Prior to offering the actual knife as evidence, the State attempted to introduce 
into evidence State’s Exhibit #27, a close-up photograph of the knife. 
However, Hardy objected as to the admissibility of the evidence, complaining 
that the photograph was cumulative of other evidence and that the probative 
value of the photograph was more prejudicial than probative. After a discussion 
off the record, the trial court sustained Hardy’s objection without indicating 
the grounds for its ruling.
8.  
Hardy requests that this court formulate a new standard to review the legal 
sufficiency of the evidence. Because we are constrained by precedent, we decline 
to do so. See Taulung, 979 S.W.2d at 857.