COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-288-CR
 
  
MARCOS 
MAGDELEANO RODRIGUEZ                                      APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
THE 30TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
 
I. 
Introduction
        A 
jury found Appellant Marcos Magdeleano Rodriguez guilty of indecency with a 
child and assessed punishment at twelve years’ confinement.  Appellate 
counsel has filed an Anders brief asserting that there are no grounds 
that could be argued successfully on appeal. Anders v. California, 386 
U.S. 738, 87 S. Ct. 1396 (1967).  We grant counsel’s motion to withdraw 
and affirm the trial court’s judgment.
II. 
Background
        On 
March 25, 2001, Rodriguez stopped by Heather Torrence’s home to visit her and 
her two young sons. Because Rodriguez was the brother of one of Torrence’s 
friends, he often babysat for Torrence’s boys while also keeping his 
sister’s children.  After visiting with Torrence for a period of time, 
Rodriguez went into the dining room to draw pictures with Torrence’s 
three-year-old son, C.B. Shortly thereafter, when Torrence entered the dining 
room to check on Rodriguez and C.B., she observed C.B. standing on a chair with 
Rodriguez sitting in a chair directly next to the boy. According to Torrence, 
Rodriguez had his hand “below the navel in the front” on C.B.’s body, and 
C.B.’s shorts appeared twisted as though they had “just been pulled right 
back up.” Torrence immediately took C.B. to his room and questioned him about 
what had transpired in the dining room. In response, C.B. told his mother that 
Rodriguez had touched his “peepee.”
        Thereafter, 
during the course of a custodial interrogation, Rodriguez admitted in a recorded 
statement that he had touched C.B.’s penis with his hand for approximately 
five minutes during the March 25 incident. Rodriguez was subsequently charged 
with indecency with a child, a second degree felony. See Tex. Penal Code Ann. § 21.11 
(Vernon Supp. 2003). Rodriguez pleaded not guilty to the offense. However, after 
hearing evidence and testimony from both sides, the jury found Rodriguez guilty 
and assessed his punishment at twelve years’ confinement. Rodriguez appealed.
III. 
The Anders Brief
        Rodriguez’s 
court-appointed appellate counsel has filed a motion to withdraw.  In 
support of his motion, counsel has filed a detailed brief in which he avers 
that, in his professional opinion, this appeal is frivolous. Counsel’s brief 
and motion meet the requirements of Anders by presenting a professional 
evaluation of the record demonstrating why there are no arguable grounds for 
relief.  386 U.S. 738, 87 S. Ct. 1396; see Mays v. State, 904 S.W.2d 
920, 922-23 (Tex. App.—Fort Worth 1995, no pet.). Specifically, in his brief, 
counsel raises several potential arguments on appeal, but after thoroughly 
examining each one, he concludes that none of the arguments would be 
meritorious.  We provided Rodriguez with the opportunity to file a pro se 
brief, but he did not do so.
        Once 
counsel fulfills the Anders requirements, we must conduct an independent 
evaluation of the record to determine whether counsel is correct in determining 
that the appeal is frivolous.  See Stafford v. State, 813 S.W.2d 
503, 511 (Tex. Crim. App. 1991); Mays, 904 S.W.2d at 923.  We have 
conducted an independent review of the record and have determined just that.
IV. 
Independent Review of the Record
        A. Pre-trial
        In 
the instant case, the indictment tracks the statutory language of the offense 
for which Rodriguez was convicted. It alleges that the offense occurred before 
the presentment of the indictment.  See Tex. Penal Code Ann. § 
21.11(a).  The indictment conferred jurisdiction on the trial court and 
provided Rodriguez with sufficient notice to prepare a defense.  See 
Tex. Const. art. V, § 12; Duron v. State, 
956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997).
        Prior 
to trial, Rodriguez filed a motion to suppress the oral statement given to 
police after he was taken into custody, complaining that his statement was not 
freely and voluntarily made. After a hearing, the trial court denied 
Rodriguez’s motion, finding that the statement was voluntary, and therefore, 
admissible at trial. This court reviews a trial court’s denial of a motion to 
suppress under a bifurcated standard of review, giving almost total deference to 
a trial court’s determination of historic facts and reviewing de novo the 
court’s application of the law to those facts. Carmouche v. State, 10 
S.W.3d 323, 327 (Tex. Crim. App. 2000).
        At 
the suppression hearing, Officer William Brett Hart, a Wichita Falls police 
officer, testified that Rodriguez was fully advised of his rights before giving 
his statement, and he agreed to waive them. According to Officer Hart, Rodriguez 
was not threatened or coerced into giving the statement.  Officer Hart also 
testified that during the questioning, Rodriguez was not promised anything in 
exchange for his statement, and he never requested an attorney or asked that 
questioning cease.  Officer Hart was the only witness who testified at the 
suppression hearing.
        Thereafter, 
Rodriguez argued that his statement was involuntary because he invoked his right 
to remain silent during the interrogation, he was promised a benefit in exchange 
for his confession, and he lacked a sufficient “mental functioning 
level.”  Specifically, Rodriguez maintained that he invoked his right to 
remain silent in the following exchange:
 
[OFFICER 
HART]: You guess? I know it happened. C.B. knows it happened. Heather saw what 
happened. Now you tell me, did the bad person take over a little bit that . . 
that morning? Or did the good person just say, well, I’m going to do it 
anyway. Which one is it? You don’t know or you don’t want to answer?
 
        RODRIGUEZ: 
Don’t want to answer.
  
        It 
is well-settled law that law enforcement is permitted to interrogate a suspect 
in custody until the suspect unambiguously invokes his right to remain silent. Dowthitt 
v. State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).  Moreover, law 
enforcement is not required to ask questions to clarify whether a suspect wishes 
to invoke his right to remain silent.  Id.  In the instant 
case, Rodriguez’s statement was a direct response to Officer Hart’s previous 
question.  Consequently, Rodriguez did not unambiguously invoke his right 
to remain silent, and Officer Hart did not violate Rodriguez’s right by 
continuing to interrogate him.
        The 
record also reflects that Officer Hart never promised Rodriguez any benefit or 
leniency in order to induce him to confess.  During the interrogation, 
Officer Hart was merely attempting to persuade Rodriguez to tell the truth about 
what had transpired between him and C.B.  See Dykes v. State, 657 
S.W.2d 796, 797 (Tex. Crim. App. 1983) (recognizing that confession is not 
rendered inadmissible by telling suspect that it would be best to tell the 
truth).
        Additionally, 
evidence of mental deficiency alone does not render a confession 
involuntary.  See Penry v. State, 903 S.W.2d 715, 744-46 (Tex. Crim. 
App.), cert. denied, 516 U.S. 977 (1995).  In the instant case, 
there is no evidence in the record demonstrating that Rodriguez’s mental 
impairment was so severe that he was incapable of understanding the meaning and 
effect of his confession.  See Casias v. State, 452 S.W.2d 
483, 488 (Tex. Crim. App. 1970).
        Therefore, 
because the record supports the trial court’s finding that Rodriguez’s oral 
statement was freely and voluntarily made, the trial court did not abuse its 
discretion by denying Rodriguez’s motion to suppress.  See Tex. Code Crim. Proc. Ann. arts. 
38.21-.22 (Vernon 1979 & Supp. 2004); Dewberry v. State, 4 S.W.3d 
735, 747-48 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).  Further, with the exception of matters related to Rodriguez’s 
motion to suppress, Rodriguez’s pretrial motions were either granted, agreed 
to by the State, or agreed to by Rodriguez and the State at the pretrial 
hearing.
        During 
voir dire, the trial court permitted Rodriguez to ask proper questions of the 
panel.  The trial court also granted all Rodriguez’s challenges for 
cause.  However, after the State exercised its peremptory strikes, 
Rodriguez raised a Batson[1] challenge, 
claiming that the State struck two Hispanic venire members, Mr. Jimenez and Mr. 
Hernandez, solely based on their race.  After hearing argument from both 
sides, the trial court denied Rodriguez’s Batson challenge as to both 
Mr. Jimenez and Mr. Hernandez.
        When 
reviewing a Batson challenge on appeal, we must determine whether the 
trial court’s decision was “clearly erroneous” by examining the evidence 
in the light most favorable to the trial court's ruling. Yarborough v. State, 
983 S.W.2d 352, 354 (Tex. App.—Fort Worth 1998, no pet.).  A ruling is 
clearly erroneous when, after searching the record, we form a definite and firm 
conviction that a mistake has been committed.  Hill v. State, 827 
S.W.2d 860, 865-66 (Tex. Crim. App.), cert. denied, 506 U.S. 905 
(1992).  The trial court’s determination as to whether a defendant 
carried his burden to prove purposeful discrimination is a finding of fact that 
must be accorded great deference on appeal.  See Chambers v. State, 
866 S.W.2d 9, 23 (Tex. Crim. App. 1993), cert. denied, 511 U.S. 1100 
(1994).  Therefore, we will not disturb the trial court’s decision on 
appeal absent some evidence in the record to rebut the State’s race-neutral 
explanations.  Yarborough, 983 S.W.2d at 354.
        During 
the Batson hearing, the State advised the trial court that it struck Mr. 
Jimenez because “he was highly skeptical of police officers and he was chewing 
gum.”  Both of the State’s aforementioned reasons for striking Mr. 
Jimenez were facially valid and race-neutral.  See Davis v. State, 
964 S.W.2d 352, 355 (Tex. App.—Fort Worth 1998, no pet.) (holding challenge 
based on venire member’s statement that prior incident with police left a bad 
taste in her mouth was race-neutral); Webb v. State, 840 S.W.2d 543, 
545-46 (Tex. App.—Dallas 1992, no pet.) (holding challenge based on venire 
member chewing gum during voir dire was race-neutral).  Our review of the 
record reveals no evidence rebutting the State’s race-neutral explanation for 
striking Mr. Jimenez.  Therefore, the trial court’s denial of 
Rodriguez’s Batson challenge as to Mr. Jimenez was not clearly 
erroneous.  See Pitte v. State, 102 S.W.3d 786, 791 (Tex. 
App.—Texarkana 2003, no pet.) (stating that “[w]hen the trial court is 
offered no evidence in rebuttal of the State’s race-neutral explanation, the 
reviewing court is not in a position to say that it feels a definite and firm 
conviction that the trial court made a mistake.”).
        The 
State also explained that it peremptorily challenged Mr. Hernandez because one 
of the prosecutors saw him raise his hand in response to a question asking, 
“Is there anyone on the panel who has a friend or family member who was 
fondled or molested or who yourself was a victim of that?”  A venire 
member’s history as a crime victim constitutes a race-neutral reason for 
exercising a peremptory strike.  See Catley v. State, 763 S.W.2d 
465, 466-67 (Tex. App.—Houston [14th Dist.] 1988, pet. ref’d). 
Although Rodriguez immediately advised the trial court that he did not observe 
Mr. Hernandez raise his hand in response to the State’s question, he did not 
attempt to recall Mr. Hernandez to determine whether or not he had actually 
raised his hand.  Thereafter, the trial court accepted the State’s 
race-neutral reason for striking Mr. Hernandez and rejected Rodriguez’s claim 
that the reason was merely a pretext for purposeful discrimination.  
Because the trial court’s decision turned largely on an evaluation of 
credibility and is supported by the record, the denial of Rodriguez’s Batson 
challenge as to Mr. Hernandez was not clearly erroneous.  See Ladd v. 
State, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1070 (2000); Cantu v. State, 842 S.W.2d 667, 689 (Tex. Crim. App. 
1992), cert. denied, 509 U.S. 926 (1993).  Thus, our review of the 
record reveals that no reversible error occurred prior to trial.
        B. Guilt-Innocence Phase
        Prior 
to opening arguments, the trial court held a hearing outside the jury’s 
presence to determine if C.B.’s outcry statement to Torrence was 
reliable.  The Texas Code of Criminal Procedure provides for the admission 
of out-of-court statements by sexual assault victims under the age of twelve if 
the statement alleging the offense was made by a child against whom the offense 
was allegedly committed and was made to the first person, eighteen years of age 
or older, other than the defendant, to whom the child made a statement about the 
offense.  Tex. Code Crim. Proc. Ann. art. 38.072, 
§ 2(a)(1) (Vernon Supp. 2004).  The record in the instant case 
demonstrates that the State complied with the first required predicate for 
admission of the statement by providing sufficient notice to Rodriguez, 
including the identity of Torrence as the outcry witness and a summary of her 
statement.  See id. § 2(b)(1)(B), (C). Moreover, the record 
reflects that Torrence was the first person to whom C.B. spoke concerning the 
sexual misconduct at issue in the case and that C.B. was available to testify at 
trial if he was called as a witness.  See id. § 2(a), (b)(3).  
Further, C.B.’s statement to Torrence was specific and factually related to 
the offense for which Rodriguez was charged.  See Garcia v. State, 
792 S.W.2d 88, 90-91 (Tex. Crim. App. 1990) (recognizing that statement must 
provide more than general allusion of abuse to satisfy requirements of the 
outcry witness statute).
        Based 
upon the content and circumstances of the statement, the trial court determined 
that Torrence was a proper outcry witness, thereby implying that it perceived 
C.B.’s statement to be reliable.[2]  See 
Villalon v. State, 791 S.W.2d 130, 136 (Tex. Crim. App. 1990).  
Therefore, because the record reflects that the statutory requirements were 
satisfied, the trial court’s ruling permitting Torrence to testify as an 
outcry witness was not an abuse of discretion.  See id.
        During 
the course of the trial, Rodriguez objected to the introduction of the cassette 
tape containing Rodriguez’s oral statement to Officer Hart, complaining once 
again about the voluntariness of his statement.  Based on the preliminary 
determination of the admissibility of the statement, the trial court overruled 
his objection and admitted the evidence.  Our review of the record reveals 
that the trial court’s ruling on Rodriguez’s objection did not constitute an 
abuse of discretion.
        The 
court’s charge on guilt-innocence included an instruction for the jury to 
disregard the confession if it entertained reasonable doubt as to whether 
Rodriguez’s confession was freely and voluntarily made.  Moreover, the 
charge on guilt-innocence properly defined the law and applied the law to the 
facts of the case, and Rodriguez did not object to the court’s charge.  
Likewise, the State’s opening statement to the jury was proper and was made 
without objection from Rodriguez.
        During 
closing argument, Rodriguez did object to a portion of the State’s argument on 
the ground that the State was attempting to shift the burden of proof.  
However, the trial court properly overruled the objection because the State’s 
reference to the subpoena power of the defense was made in response to an 
argument by Rodriguez.  Specifically, after Rodriguez challenged the 
State’s failure to provide testimony from certain sources, the State merely 
pointed out that Rodriguez failed to provide testimony from those sources as 
well.  See Harris v. State, 122 S.W.3d 871, 884 (Tex. App.—Fort 
Worth 2003, no pet.) (holding State’s comment about subpoena power of 
defendant proper if it refers to defendant's failure to produce evidence from 
other sources).
        After 
reviewing the record and applying the appropriate standard of review,[3] we also conclude that the evidence is both legally and 
factually sufficient to support Rodriguez’s conviction for indecency with a 
child. Based on the testimony and evidence presented at trial, the jury could 
have reasonably found the essential elements of the offense beyond a reasonable 
doubt.  See Tex. Penal Code Ann. art. 21.11.
        Finally, 
Rodriguez’s counsel at trial effectively cross-examined the State’s 
witnesses and attempted to establish reasonable doubt regarding both the 
voluntariness of Rodriguez’s statement to Officer Hart and the proof of the 
charged offense.  Thus, counsel’s performance at the guilt-innocence 
phase of trial was constitutionally sufficient.  See Strickland v. 
Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Consequently, after 
reviewing the record, we have found no reversible error during the 
guilt-innocence phase of Rodriguez’s trial.
        C. Punishment
        During 
the punishment phase, Rodriguez raised several objections regarding the 
admissibility of his juvenile record.  After a finding of guilt, evidence 
that a defendant was adjudicated delinquent based on the commission of a felony 
or a jailable misdemeanor is admissible if the trial court deems it relevant to 
sentencing.  Tex. Code Crim. Proc. Ann. art. 37.07, 
§ (3)(a)(1) (Vernon Supp. 2004).  The record reveals that, prior to trial 
and in accordance with his request, Rodriguez received notice of the State’s 
intent to introduce evidence of Rodriguez’s prior adjudications.  See 
id. § 3(g)  Moreover, the trial court’s charge on punishment 
instructed the jury that it should consider the evidence only if it was 
satisfied beyond a reasonable doubt that Rodriguez had committed the extraneous 
crimes.  See id. § (3)(a)(1), (b).  Thus, the trial court did 
not abuse its discretion by admitting evidence of Rodriguez’s juvenile 
adjudications.
        Rodriguez 
also objected to the testimony of prosecution witness Ron Perrett, an expert on 
sex offenders.  During voir dire examination, Perrett stated that he would 
testify that Rodriguez was a danger to the community and was at high risk to 
reoffend sexually if not incarcerated.  Thereafter, Rodriguez challenged 
both Perrett’s qualifications as an expert and the scientific validity of 
Perrett’s testimony.  He also pointed out that Perrett had never 
interviewed or had any contact with Rodriguez.
        Under 
Texas Rule of Evidence 702, the trial court must find that the following three 
conditions are satisfied before admitting expert testimony:  (1) the 
witness qualifies as an expert by reason of her knowledge, skill, experience, 
training, or education; (2) the subject matter of the testimony is an 
appropriate one for expert testimony; and (3) admitting the expert testimony 
will actually assist the trier of fact in deciding the case. Tex. R. Evid. 702; Alvarado 
v. State, 912 S.W.2d 199, 215-16 (Tex. Crim. App. 1995).  The trial 
court's determination regarding experts’ qualifications and the admissibility 
of expert testimony is subject to an abuse of discretion standard of 
review.  Lagrone v. State, 942 S.W.2d 602, 616 (Tex. Crim. App.), cert. 
denied, 522 U.S. 917 (1997); Alvarado, 912 S.W.2d at 216.
        On 
voir dire, Perrett testified that he had worked with “several thousand” sex 
offenders since the beginning of his career in 1977 and had testified as a risk 
assessment expert numerous times. According to Perrett, he held a Bachelor of 
Arts degree with a double major in sociology and psychology, a Master of Science 
degree in social work, and a license from the State to provide treatment to both 
juvenile and adult sex offenders and to train and supervise other treatment 
providers. Perrett is a clinical member of the American Counseling Association 
and the Association for the Treatment of Sex Offenders and maintains his 
knowledge in the field of sex offenders, social work, and counseling by 
attending over forty hours of continuing education per year.  Perrett 
testified that risk assessment was an established area of expertise as related 
to sex offenders and indicated that the field was well-documented by research 
and literature.  Perrett maintained that his opinion concerning 
Rodriguez’s risk of reoffending was based on years of specialized experience, 
education, and training, coupled with knowledge derived from studying the works 
of researchers in the field of risk assessment.
        In 
the instant case, Perrett was not required to personally interview or to have 
contact with Rodriguez prior to trial in order to render an opinion as to 
whether he was likely to reoffend if not incarcerated. See Tex. R. Evid. 703 
(recognizing that “facts or data in the particular case upon which an expert 
bases an opinion or inference may be those perceived by, reviewed by, or made 
known to the expert at or before the hearing”).  Based on Perrett’s 
extensive background, experience, and expertise in the area of sex offenders, 
the trial court could have reasonably concluded that Perrett was qualified to 
testify as an expert on the issue of whether a convicted sex offender poses a 
continuing threat to society.  See Hardin v. State, 20 S.W.3d 84, 92 
(Tex. App.—Texarkana 2000, pet. ref’d) (holding expert’s twenty years’ 
experience investigating and supervising sex offenders and her extensive and 
continuous training qualified her to testify as an expert on the issue of 
whether a convicted sex offender posed a continuing threat to society).  
Moreover, due to Perrett’s superior knowledge concerning sex offenders, 
providing an assessment of a sex offender’s risk of reoffending was within his 
expertise. Perrett’s testimony also demonstrated the proper reliance on 
accepted principles in his field.  Thus, the trial court did not abuse its 
discretion by allowing Perrett’s testimony.  See Hernandez v. State, 
53 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2001, pet. 
ref’d) (recognizing that experience alone may demonstrate that expert’s 
testimony is reliable); Hardin, 20 S.W.3d at 92 (same).
        None 
of the trial court’s other rulings on Rodriguez’s objections during 
punishment constitute reversible error or an abuse of discretion.  In 
addition, while Rodriguez objected to paragraph ten of the charge on punishment, 
the trial court’s decision to overrule his objection was not erroneous.  
The court’s charge on punishment properly instructed the jury on the 
applicable range of punishment.  See Tex. Penal Code Ann. § 12.33 
(Vernon 2003).  The State’s opening statement and closing argument during 
punishment were also proper.  Further, counsel’s performance satisfied 
the standard announced in Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. 
App. 1999).  Finally, Rodriguez’s twelve-year sentence is within the 
statutory range for a second-degree felony.  See Tex. Penal Code Ann. § 
12.33.  Thus, our review of the record reveals no reversible error from the 
punishment phase.
V. 
Conclusion
        Based 
on our independent review of the record in this case, we have determined that 
there is no error on which an appeal could be based or which would require 
reversal.  Therefore, because we agree with counsel’s professional 
determination that an appeal in the instant case is frivolous, we grant 
counsel’s motion to withdraw and affirm the trial court’s judgment.
 
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 15, 2004


NOTES
1.  
Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986).  Under Batson, 
a three-step process is used to determine whether the State exercised its 
peremptory strikes in a discriminatory manner: (1) the opponent of a peremptory 
challenge must make out a prima facie case of racial discrimination; (2) the 
burden then shifts to the proponent of the strike to come forward with a 
race-neutral explanation; and (3) if a race-neutral explanation is tendered, the 
trial court must then decide whether the opponent of the strike has proved 
purposeful racial discrimination.  Id. at 93-98, 106 S. Ct at 
1721-24; see also Tex. Code Crim. Proc. Ann. art. 
35.261(a) (Vernon 1989) (prohibiting peremptory strikes based on race).
2.  
The trial court specifically limited Torrence’s testimony to the child’s 
statement as summarized in “The State’s Original Notice of Intent to Offer 
Hearsay Statements of Child Sexual Abuse Victim.”
3.  
See, e.g., West v. State, 121 S.W.3d 95, 110-11 (Tex. App.—Fort Worth 
2003, no pet.); Garcia v. State, 112 S.W.3d 839, 851-52 (Tex. 
App.—Houston [14th Dist.] 2003, no pet.).